## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

### *ELECTRONICALLY FILED*

| | |
|---|---|
| JOANNE BARROWS and SUSAN HAGOOD, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:23-cv-00654-RGJ |
| v. | |
| HUMANA, INC., | |
| Defendant. | |

### DEFENDANT'S MOTION TO DISMISS
### PLAINTIFFS' CLASS ACTION COMPLAINT

Michael P. Abate
Burt Anthony Stinson
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
E-mail: mabate@kaplanjohnsonlaw.com
E-mail: cstinson@kaplanjohnsonlaw.com

Kevin D. Feder
Jason Yan
Gillian M. Mak
O'MELVENY & MYERS LLP
1625 Eye Street NW, 12061
Washington, DC 20006
Telephone:  202-383-5164
Facsimile: 202-383-5414
E-mail: kfeder@omm.com
E-mail: jyan@omm.com
E-mail: gmak@omm.com

*Attorneys for Defendant*

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 5

    I.      THE MEDICARE ADVANTAGE PROGRAM ...................................... 5

    II.    PLAINTIFFS' CLAIMS FOR SKILLED NURSING BENEFITS ...................... 6

STANDARD OF REVIEW ................................................................................. 9

ARGUMENT ..................................................................................................... 10

    I.      THE MEDICARE ACT DEPRIVES THIS COURT OF SUBJECT
          MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS, WHICH
          ARE SUBJECT TO A MANDATORY FEDERAL ADMINISTRATIVE
          EXHAUSTION PROCESS. ................................................................. 10

          A.    The Medicare Act Requires Plaintiffs To Exhaust A Four Step
                Administrative Review Process Before This Court Can Hear Their
                Claims. ................................................................................... 11

          B.    Plaintiffs' Claims Are Subject To The Medicare Act's Exhaustion
                Requirements Because They Are "Inextricably Intertwined" With
                The Denial Of Medicare Benefits. ........................................... 13

          C.    Plaintiffs Did Not Fully Appeal Humana's Coverage
                Determinations Through Medicare's Mandatory Federal Appeals
                Process. ................................................................................... 17

          D.    Even If Plaintiffs Had Exhausted The Mandatory Appeals Process,
                The Secretary Of Health And Human Services—Not Humana—
                Would Be The Proper Defendant................................................ 19

    II.    THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST
          HUMANA BECAUSE THEY ARE EXPRESSLY PREEMPTED BY
          THE MEDICARE ACT.......................................................................... 20

          A.    The Medicare Act Imposes A Sweeping Preemption Provision................ 20

          B.    The Medicare Act Preempts Plaintiffs' Claims Because, "at
                 Bottom" They Are About Coverage Determinations Addressed By
                Medicare's Vast Regulatory Scheme.......................................... 23

CONCLUSION.................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alston v. UnitedHealth Servs., Inc.*,
291 F. Supp. 3d 1170 (D. Mont. 2018) .......................................................................... passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 9

*Ashland, Inc. v. Oppenheimer & Co.*,
648 F.3d 461 (6th Cir. 2011) ................................................................................ 3, 9

*Barret v. Harrington*,
130 F.3d 246 (6th Cir. 1997) ................................................................................ 1, 9

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) .............................................................................. 3, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 9

*Capitol Specialty Ins. Corp. v. IKO, Inc.*,
2013 WL 6196564 (W.D. Ky. Nov. 26, 2013) ........................................................ 10

*Cathedral Rock of N. College Hill, Inc. v. Shalala*,
223 F.3d 354 (6th Cir. 2000) .................................................................................. 4

*Dicrescenzo v. UnitedHealth Grp. Inc.*,
2015 WL 5472926 (D. Haw. Sept. 16, 2015) ......................................................... 13

*Ebert v. Anthem Health Plans of Ky, Inc.*,
2022 WL 509117 (W.D. Ky. Feb. 18, 2022) ...................................................... 2, 20

*Giesse v. Sec. Dept. Health & Hum. Servs.*,
522 F.3d 697 (6th Cir. 2008) .............................................................................. 3, 14

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*,
30 F.4th 905 (9th Cir. 2022) ......................................................................... 2, 13, 14

*Haaland v. Presbyterian Health Plan, Inc.*,
292 F. Supp. 3d 1222 (D.N.M. 2018) ..................................................................... 17

*Harwood by Next Friend Adelson v. Aetna Health of Mich.*,
2023 WL 424715 (E.D. Mich. Jan. 26, 2023) ........................................... 4, 10, 15, 17

*Heckler v. Ringer*,
466 U.S. 602 (1984) ............................................................................................... 14

*Hepstall v. Humana Health Plan, Inc.*,
2018 WL 6588555 (S.D. Ala. Nov. 26, 2018) .......................................... 15, 23, 24

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
832 F.3d 1229 (11th Cir. 2016) .............................................................................. 5

*Humphrey v. U.S. Att'y Gen.'s Office*,
279 F. App'x 328 (6th Cir. 2008) ....................................................................... 3, 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Madsen v. Kaiser Found. Health Plan, Inc.*,
2009 WL 1537878 (S.D. Cal. June 2, 2009)......................................................... 20

*Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Hernández*,
58 F.4th 5 (1st Cir. 2023) .................................................................................. 21, 22

*Morrison v. Health Plan of Nev., Inc.*,
130 Nev. 517 (Nev. 2014)...................................................................................... 5, 22

*Moses v. United Healthcare Corp.*,
2020 WL 2037115 (D. Ariz. Apr. 28, 2020) ............................................................ 13

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023)........................................................................ 4, 21, 22

*Phillips v. Kaiser Found. Health Plan, Inc.*,
953 F. Supp. 2d 1078  (N.D. Cal. 2011) .................................................................. 22

*Potts v. Rawlings Co.*,
897 F. Supp. 2d 185 (S.D.N.Y. 2012) ..................................................................... 22

*Powell v. Comm'r of Soc. Sec.*,
2019 WL 4686491 (E.D. Mich. Sept. 26, 2019)......................................................... 3

*Quishenberry v. UnitedHealthcare, Inc.*,
532 P.3d 239 (Cal. 2023) ........................................................................................ 22

*Robinson v. Woods*,
901 F.3d 710 (6th Cir. 2018).................................................................................... 3

*Rudek v. Presence Our Lady of Resurrection Med. Ctr.*,
2014 WL 5441845 (N. D. Ill. Oct. 27, 2014)............................................................ 21

*Snyder v. Prompt Medical Transportation, Inc.*,
131 N.E.3d 640 (Ind. Ct. App. 2019) ..................................................................... 25

*Tackett v. M & G Polymers, USA, LLC*,
561 F.3d 478 (6th Cir. 2009)..................................................................................... 9

*Taylor v. Keycorp*,
680 F.3d 609 (6th Cir. 2012).............................................................................. 10, 18

*Tenet Healthsystem GB, Inc., v. Care Improvement Plus S. Cent. Ins. Co.*,
875 F.3d 584 (11th Cir. 2017)................................................................................. 13

*Thumann v. Cochran*,
2021 WL 1222142 (S.D. Ohio Mar. 31, 2021) ........................................................... 3

*Toth v. Grand Trunk R.R.*,
306 F.3d 335 (6th Cir. 2002)..................................................................................... 3

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
2023 WL 2573914, (5th Cir. Mar. 20, 2023) ...................................................... 3, 11

*Uhm v. Humana, Inc.*,
620 F.3d 1134 (9th Cir. 2010) ........................................................................... passim

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. An Undetermined Quantity of An Article of Drug Labeled As Benylin Cough Syrup,*
583 F.2d 942 (7th Cir. 1978) ...................................................................................... 2

*United States v. Blue Cross & Blue Shield of Ala., Inc.,*
156 F.3d 1098 (11th Cir. 1998) .......................................................................... 14, 25

*Williams v. Allegheny Cnty.,*
2023 WL 4238892 (W.D. Pa. June 28, 2023) ................................................... 13, 22

**Statutes**

42 U.S.C. § 1395ii ................................................................................................. 12, 14

42 U.S.C. § 1395w-22(g) .......................................................................................... passim

42 U.S.C. § 1395w-26(b)(3) ................................................................................. 4, 6, 21

42 U.S.C. § 1395w-26(b)(3)(A)(2000) .......................................................................... 20

42 U.S.C. § 1395w-26(b)(3)(A)(2003) .......................................................................... 20

42 U.S.C. § 405(g) ........................................................................................... 2, 12, 18, 19

42 U.S.C. § 405(h) ................................................................................................... 10, 14

42 U.S.C. § 405.1136(d)(1) ............................................................................................ 18

42 U.S.C. §§ 405(g)-(h) .......................................................................................... 12, 13

**Other Authorities**

CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization Management Requirements in CMS Final Rule (CMS-4201-F) (Feb. 6, 2024) ...................... 6

Medicare Program: Establishment of the Medicare Advantage Programs, 70 Fed. Reg. 4588 (Jan. 28, 2005) ....................................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(1), (6) ...................................................................................... 9, 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Regulations**

40 Fed. Reg. at 4665 ................................................................................................ 22

42 C.F.R. § 405.1102(a)(1) ...................................................................................... 18

42 C.F.R. § 405.1136(d)(1) ......................................................................... 2, 18, 20

42 C.F.R. § 405.920 .................................................................................................... 2

42 C.F.R. § 409.30 ............................................................................................. 5, 24

42 C.F.R. § 409.31 ............................................................................................. 5, 24

42 C.F.R. § 409.32 ............................................................................................. 5, 24

42 C.F.R. § 409.33 ............................................................................................. 5, 24

42 C.F.R. § 422.1 ...................................................................................................... 6

42 C.F.R. § 422.101 ........................................................................................... 5, 24

42 C.F.R. § 422.112(a)(6)(ii) ................................................................................. 24

42 C.F.R. § 422.137 .................................................................................... 6, 16, 24

42 C.F.R. § 422.402 ..................................................................................... 4, 6, 21

42 C.F.R. § 422.560 ................................................................................. 12, 17, 19

42 C.F.R. § 422.566 ........................................................................................ passim

42 C.F.R. § 422.568 ......................................................................................... 11, 18

42 C.F.R. § 422.608 ......................................................................................... 12, 18

42 C.F.R. § 422.612 .................................................................... 2, 12, 18, 20

42 C.F.R. § 422.626 ......................................................................................... 12, 18

42 C.F.R. § 424.20 ............................................................................................. 5, 24

42 C.F.R. §§ 409.30–409.36 ..................................................................... 6, 16, 17

42 C.F.R. §§ 422.111, 422.2261 ............................................................................ 15

42 C.F.R. §§ 422.560–422.626 .............................................................................. 13

42 C.F.R. §§ 422.578–422.590 .............................................................................. 12

42 C.F.R. §§ 422.592–422.596 .............................................................................. 12

42 C.F.R. §§ 422.600–422.602 ....................................................................... 12, 18

42 C.F.R. §§ 422.600–422.608 .............................................................................. 12

70 Fed. Reg. at 4665 ........................................................................................... 4, 6

Defendant Humana Inc. ("Humana" or "Defendant") respectfully moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the December 12, 2023 Class Action Complaint filed by Plaintiffs Joanne Barrows and Susan Hagood (collectively "Plaintiffs"). In short, Plaintiffs cannot forum-shop their way to a different Medicare coverage determination.

## INTRODUCTION

Plaintiffs are Medicare Part C[1] enrollees. They each received Medicare Benefits under Part C of the Medicare Act through a Medicare Advantage ("MA") plan administered by Humana. Plaintiffs allege that Defendant wrongly denied Plaintiffs' requests for coverage of certain Medicare Benefits. Plaintiffs' putative class Complaint (R. 1)—which is heavily copied-and-pasted from a similar action filed by the same law firm against another Medicare Advantage Organization ("MAO")[2]—includes sensationalized allegations that Humana makes post-acute care coverage determinations based solely on the output of an Artificial Intelligence program. Plaintiffs' allegations are false.[3] But, even accepting Plaintiffs' allegations as true for purposes of this motion, Plaintiffs' Complaint must be dismissed for two reasons:

*First*, the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims because Plaintiffs have failed to exhaust the exclusive administrative appeal process set by the Medicare

---

[1] Medicare Part C is also known as Medicare Advantage and was previously known as Medicare+Choice. *See* Medicare Program: Establishment of the Medicare Advantage Programs, 70 Fed. Reg. 4588, 4589 (Jan. 28, 2005).

[2] *Estate of Gene B. Lokken, et al. v. UnitedHealth Grp., Inc., et al.*, ECF 1, No. 0:23-cv-03514-JRT-DTS (D. Minn. Nov. 14, 2023).

[3] Humana acknowledges that the Court is required to "take as true all factual allegations in the complaint." *See Barret v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997). Humana notes, however, that if this case were to proceed past the motion to dismiss stage, the facts would unambiguously show that the Complaint's allegations that Humana uses the nH Predict tool to make adverse coverage determinations without human intervention have no merit. Further, the coverage determinations at issue in this case were reviewed and upheld at every level of administrative review that the Plaintiffs sought. *See infra* nn. 4–5.

Act for challenging a MAO's coverage determination.  Under the Medicare Act and Centers for Medicare and Medicaid Services ("CMS") regulations, any Medicare beneficiary who disagrees with a benefit determination by her MAO must exhaust a four-step mandatory administrative review process that concludes with potential review by the Medicare Appeals Council, a federal agency authorized to issue final benefit determinations on behalf of the Secretary of Health and Human Services ("HHS").  *See* 42 C.F.R. § 405.920 *et seq.*; *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 911 (9th Cir. 2022).  If a member disagrees with the Medicare Appeals Council's determination on behalf of the Secretary of HHS, she can seek relief in federal court by filing a lawsuit against the Secretary of HHS challenging the outcome of the agency's administrative determination.  She cannot sue her MAO.  *See* 42 U.S.C. § 405(g); 42 C.F.R. § 422.612(c); *id.* at § 405.1136(d)(1); *see also Ebert v. Anthem Health Plans of Ky, Inc.*, 2022 WL 509117, at *2 (W.D. Ky. Feb. 18, 2022) (explaining that "in any civil action brought in federal court [disputing coverage of Medicare Benefits], the Secretary of HHS, in his or her official capacity, is the proper defendant." (internal quotations omitted)).

Plaintiffs seek to sidestep the exclusive administrative appeal process set by the Medicare Act.  Indeed, both Plaintiffs have partially completed Medicare Part C's exclusive administrative appeal process:  Plaintiff Susan Hagood received an adverse decision from a HHS Administrative Law Judge denying her appeal and upholding Humana's Medicare coverage determination (step three in the Medicare Part C administrative appeal process).[4]  And Plaintiff Joanne Barrows

---

[4] *See* Exhibit 1 (the ALJ Decision for Ms. Hagood's appeal) at 1–2, 14.  Although Plaintiffs avoid mention of the administrative record in their Complaint, the Court may take judicial notice of an ALJ decision and evaluate the administrative record without converting this motion into one for Summary Judgment.  "[T]he decision of an ALJ is a proper subject of judicial notice." *United States v. An Undetermined Quantity of An Article of Drug Labeled As Benylin Cough Syrup*, 583 F.2d 942, 946 n.3 (7th Cir. 1978) (citing 10 Moore's Federal Practice § 201.02[1]).  In general, this Court "has the power to 'judicially notice a fact that is not subject to reasonable dispute

similarly had her appeal denied by an independent Quality Improvement Organization ("QIO") appointed by CMS (step one in the Medicare Part C "fast-track" appeal process).[5]  Unhappy with those decisions, Plaintiffs now attempt to pursue state-law causes of action in this Court.  But, just as numerous other courts have held, those claims must be dismissed because this Court lacks subject matter jurisdiction to hear them.[6]  *See, e.g.*, *Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914, at *5 (5th Cir. Mar. 20, 2023) (per curiam); *Giesse v. Sec. Dept. Health & Hum. Servs.*, 522 F.3d 697, 702–03 (6th Cir. 2008) ("[S]ection 405(h) clearly prohibits judicial review of plaintiff's claims

---

because it...can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Robinson v. Woods*, 901 F.3d 710, 712 n.1 (6th Cir. 2018) (quoting Fed. R. Evid. 201(b), (d)).  And as other courts in this circuit have uniformly held, the findings of an "ALJ decision cannot reasonably be questioned." *Powell v. Comm'r of Soc. Sec.*, 2019 WL 4686491, at *4 (E.D. Mich. Sept. 26, 2019) (taking judicial notice of ALJ decision); *Thumann v. Cochran*, 2021 WL 1222142, at *2 n.3 (S.D. Ohio Mar. 31, 2021) ("While ALJ Bruch's decision is not part of the certified administrative record, the Court finds it proper to take judicial notice of ALJ Bruch's decision"); *cf. Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority").  In this case, the ALJ decision outlines the procedural history, and explains Humana met its burden of proving that termination of Ms. Hagood's SNF services was correct.

[5] *See* Exhibit 2 (the QIO determination for Ms. Barrows' appeal).  On December 11, 2021, Livanta, the CMS-appointed QIO responsible for reviewing Humana's denial of coverage, issued a determination letter upholding Humana's denial of coverage.  The reviewer found that Ms. Barrows no longer met Medicare coverage requirements for SNF services.  Because the Complaint alleges that "Ms. Barrows and her family vigorously appealed Humana's denial, but their efforts were unsuccessful," Compl., R. 1, PageID#: 13 (¶ 44), this Court is free to consider the referenced appeal determinations.  *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (citation omitted); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Moreover, because this issue goes to the Court's subject-matter jurisdiction, it would be free to consider documents bearing on administrative exhaustion even if they were not referenced in the Complaint.  *See Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

[6] Plaintiffs fail to establish that the Court has subject matter jurisdiction because they did not adequately plead that they exhausted the four-step mandatory administrative review process required by the Medicare Act.  The Complaint does not allege that either Plaintiff exhausted this process.  And, if it had, the Secretary of HHS would be the proper defendant, not Humana.

[that medical benefits were allegedly arbitrarily and capriciously terminated] absent exhaustion of available administrative remedies."); *Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000). Indeed, for precisely this reason, another federal district court within the Sixth Circuit dismissed a Medicare Part C enrollee's claims for similar post-acute care just last year. *See Harwood by Next Friend Adelson v. Aetna Health of Mich.*, 2023 WL 424715, at *2 (E.D. Mich. Jan. 26, 2023) (explaining that all of the plaintiff's claims arose under the Medicare Act because each was "inextricably intertwined with a Medicare benefits determination").

*Second*, the Court should dismiss this case because the Medicare Act expressly preempts all of the Plaintiffs' state law claims. Plaintiffs attempt to avoid the Medicare Act's requirements by pursuing state law causes of action through this lawsuit—however, they fail to state a claim for which relief can be granted because the Medicare Act preempts all of their claims. To ensure uniform administration of the Medicare Act's rules and regulations nationwide, Congress amended the Medicare Act to expressly preempt any state law or cause of action related to Medicare Act standards. *See* 42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. § 422.402. Specifically, Congress intended to "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations," *id.*, "including those established through case law," 70 Fed. Reg. at 4665—bringing not just state statutes and regulations within the scope of the Medicare Act's express preemption, but also state "common law claims," *Uhm*, 620 F.3d at 1156.

Courts have interpreted the preemption provision broadly, to mandate something "akin to field preemption." *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1206 (10th Cir. 2023); *Alston v. UnitedHealth Servs., Inc.*, 291 F. Supp. 3d 1170, 1173 (D. Mont. 2018). Plaintiffs raise a patchwork of state law causes of action scrutinizing Humana's review and denial

4

of their claims for skilled nursing facility ("SNF") care, but Humana's coverage determinations are not governed by state law.  Instead, Humana is subject to "extensive regulations" by CMS, *e.g, Morrison v. Health Plan of Nev., Inc.*, 328 P.3d 1165 (Nev. 2014) (citing 42 U.S.C. § 1395w-26(b)(1) (2012)), which dictate the appropriate process for reviewing claims for Medicare Benefits and making coverage determinations for SNF benefits under the Medicare Act.  *See* 42 C.F.R. § 422.101(a), § 409.30 (basic pre-admission and admission requirements), § 409.31 (level of care requirement), § 409.32 (criteria and need for skilled services), § 409.33 (examples of what qualifies as skilled nursing services), and § 424.20 (plan of treatment and certification requirements for post hospital SNF care).  *See also* Compl., R. 1, PageID#: 7 (¶ 23), 11 (¶ 33). Allowing this case to continue would require the Court to apply twenty-three states' standards,[7] and risk outcomes that conflict with the federal government's Medicare rules.  This is exactly why the Medicare Act has such a vast preemption provision.  For these reasons, the Plaintiffs' claims are preempted, and the Complaint should be dismissed.

## BACKGROUND

### I.   THE MEDICARE ADVANTAGE PROGRAM

In 1997, Congress enacted Part C of Title XVII of the Social Security Act, known as the Medicare Act.  The Medicare Act gives Medicare beneficiaries the option to receive benefits in one of two ways.  An eligible party may participate in Medicare Parts A and B and have "CMS directly pay medical providers for [her] hospital and outpatient care."  *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).  Alternatively, a Medicare enrollee may choose to participate in a Medicare Part C plan, known as a Medicare Advantage plan, and

---

[7] Ms. Barrows is a citizen of, and received care in, Minnesota.  Compl. R. 1, PageID#: 6 (¶ 18).  Ms. Hagood is a citizen of, and received care in, North Carolina.  *Id.* (¶ 19).  The Complaint does not allege that the named Plaintiffs have any connection to the remaining twenty states.

have a MAO—rather than CMS—provide her Medicare Benefits.  *See id.*  Ms. Barrows and Ms. Hagood both elected the latter and enrolled in a Medicare Part C Plan administered by Humana.  Compl., R. 1, PageID#: 12 (¶ 39), 14 (¶ 50).

MAOs are heavily regulated entities whose activities are governed exclusively by the Medicare Act and CMS's implementing regulations.  *See*, *e.g.,* 42 C.F.R. § 422.1 *et seq*.  For instance, the Medicare Act and CMS regulations dictate *when* an MAO must cover medical services, *how* it can make those coverage determinations, and the exclusive process for a member to appeal if her coverage is denied.  *See*, *e.g.,* 42 C.F.R. §§ 409.30–409.36 (CMS regulations for coverage of posthospital SNF care), § 422.137 (MAO's use of utilization management policies and procedures), § 422.566(b) (Medicare beneficiaries' right to appeal organizational determinations through the Medicare Act's exclusive administrative appeals process); *see also* CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization Management Requirements in CMS Final Rule (CMS-4201-F) at 2 (Feb. 6, 2024) ("An algorithm or software tool may be used to assist MA plans in making coverage determinations, but it is the responsibility of the MA organization to ensure that the algorithm or artificial intelligence complies with all applicable rules for how coverage determinations by MA organizations are made.").  Congress ensured uniform implementation of this nationwide program by expressly preempting any state law or cause of action that relates to, challenges, or regulates MAOs' compliance with Medicare standards. *See* 42 U.S.C. 1395w-26(b)(3).  *See also* 42 C.F.R. § 422.402; 70 Fed. Reg. at 4665.

## II.   PLAINTIFFS' CLAIMS FOR SKILLED NURSING BENEFITS

This case concerns Humana's decision to end coverage for Ms. Barrows' and Ms. Hagood's post-acute care at a skilled nursing facility (SNF).  Humana is an MAO that provides Medicare Benefits under Medicare Part C.  Compl., R. 1, PageID#: 2 (¶ 4).  As noted above, Ms. Barrows and Ms. Hagood are Medicare beneficiaries who elected to receive their Medicare Benefits through

6

an MAO, Humana.  *Id.* at 12 (¶ 39), 14 (¶50).  Ms. Barrows resides in Minnesota, and for all times relevant to this action, Ms. Hagood was a citizen of North Carolina.  *Id*. at 6 (¶¶ 18–19).  Both Plaintiffs allege that Humana wrongly ended coverage for their stays in skilled nursing facilities ("SNFs").  *Id.* at 13 (¶ 42), 15 (¶ 57).

The Plaintiffs allege Ms. Barrows was admitted to Good Samaritan Society Ambassador Rehabilitation Facility (a SNF) following her discharge from an inpatient hospital on November 26, 2021.  *Id.* at 12 (¶ 41).  After covering two weeks of SNF care, Humana informed Ms. Barrows that additional SNF care would no longer be covered.  *Id.* at 13 (¶ 43).  The Complaint alleges that "Ms. Barrows and her family vigorously appealed Humana's denial [of coverage], but their efforts were unsuccessful" and the appeals were denied.  *Id.* (¶ 44).  Similarly, on October 26, 2022, Ms. Hagood was admitted to a SNF.  *Id.*  at 14 (¶¶ 52–53).  She was readmitted to Mission Hospital on November 28, 2022.  *Id.* at 15 (¶ 56).  On or around November 27, 2022, Humana notified Ms. Hagood that it had ended her coverage for SNF services on November 14, 2022 after determining that Ms. Hagood did not require the level of care provided by a SNF.[8]  *Id.* (¶ 57).

The Complaint includes twenty-six causes of action that tie back to Humana's denial of coverage for Ms. Barrows' and Ms. Hagood's care, and its alleged improper investigation into Plaintiffs' claims for Medicare Benefits.  Two breach of contract claims assume that Ms. Barrows and Ms. Hagood entered into a contract with Humana for the provision of insurance under the

---

[8] The Complaint misstates the timeline for Ms. Hagood's SNF care.  *See* Compl. R. 1 PageID#: 15 (¶¶ 56–57).  According to the ALJ's decision, Ms. Hagood was admitted to the SNF on October 26, 2022.  *See* Exhibit 1 at 7.  Humana covered her SNF care for 19 days.  *See id.* at 7–8.  On November 11, 2022, Humana issued a Notice of Medicare Non-Coverage informing Ms. Hagood and her family that her care would no longer be covered after November 13, 2022. *See id.* at 8–9.  Her family opted to keep her in the facility until November 28, 2022, when she was readmitted to an inpatient facility.  *See id.* at 18.

Medicare Advantage program. *Id.* at 19 (¶ 72), 21 (¶ 80). Humana's alleged breach, according to the Plaintiffs, was its "unreasonable denial to pay" for Plaintiffs' SNF claims without "adequate individualized investigation." *Id.* at 20–21 (¶¶ 74, 76–77, 84–85), and failure to provide a "thorough, fair, and objective investigation of each submitted claim prior to a claim denial." This, the Plaintiffs allege, resulted in an "unreasonable" denial of their claims for SNF benefits. *See id.* at 19–20 (¶¶ 71–78). The Plaintiffs' second cause of action alleges that Humana violated its implied covenant of good faith and fair dealing under the insurance agreement when it improperly delegated its claims review function and failed to require its agents to conduct a proper investigation of each submitted claim. *See id.* at 20–22 (¶¶ 79–88). Like the breach of contract claim, this, the Plaintiffs argue, "constitute[s] an unreasonable denial to pay benefits due to Plaintiffs." *See id.* And in their third cause of action, Plaintiffs allege that Humana unjustly enriched itself when it "knowingly received and retained wrongful benefits and funds from Plaintiffs" and "den[ied] its insureds medical payments owed to them." *Id.* at 22–23 (¶¶ 89–96).

The remaining causes of action are similarly rooted in Humana's denial of coverage and alleged improper investigation of their claims for benefits. Plaintiffs assert two North Carolina Unfair Claims Settlement Practices claims, and twenty-two additional state law causes of action under various state insurance bad faith statutes (as mentioned in footnote 7, twenty of these are in states where the Plaintiffs have no connection). *See*, *e.g., id.* at 24 (¶¶ 97–104) (state Unfair Claims Settlement Practice claim alleging that Humana "refused to pay claims without conducting a reasonable investigation based upon all available information"), 30 (¶ 147) (alleging that Humana "had no reasonable basis for the denial of coverage" in violation of Colorado's Insurance Bad Faith statute), 32 (¶162) (same, Iowa), 33 (¶ 169) (same, Kentucky), 34 (¶ 176) (same, Nebraska), 36 (¶ 191) (same, Oklahoma), (¶ 194) (same, Rhode Island), 39 (¶ 208) (same, South Dakota),

33 (¶ 173) (alleging Humana's reason for denying Plaintiffs' claims "was unreasonable and without proper cause in violation of Massachusetts' Insurance Bad Faith law), ¶ 180 (same, North Dakota), 35 (¶ 185) (alleging Humana's denial of Plaintiffs' claims "constitutes refusal to pay claims in an arbitrary and capricious manner," Insurance Bad Faith in Ohio). All are premised on the same fact pattern: Humana's purported improper denial of coverage for Plaintiffs' SNF care. *See id*. at 20–21 (¶¶ 77, 85) 23–26 (¶¶ 94, 100–02, 109–10, 114), 29–36 (¶¶ 136, 140, 147, 153, 158, 162, 169, 173, 176, 180, 184, 189, 192), 38 (¶¶ 201–02), 40–43 (¶¶ 215, 220, 225, 228–30, 233–35).

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), the Court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions weed out cases that do not warrant discovery because, based on the factual scenario on which the case rests, the plaintiff could never prevail. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court considering such a motion must disregard any conclusory allegations and judge the complaint on its well-pleaded factual allegations alone. *Id.* at 678; *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). If those factual allegations do not add up to a valid cause of action, the Court should grant the motion and dismiss the case. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–64 (2007).

Because 12(b)(6) motions test only the sufficiency of the complaint, courts generally disregard evidence that does not appear on the face of the pleading. *Barrett*, 130 F.3d at 253. Nevertheless, a court "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" without converting the motion into one for summary judgment. *Ashland*, 648 F.3d at 467 (citation omitted). It may

also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

Motions to dismiss under Rule 12(b)(1) are a different story. The point of a 12(b)(1) motion is not to test the sufficiency of the complaint, but to remove from the Court's docket cases the Court cannot decide because it lacks subject-matter jurisdiction. When ruling on such a motion, courts are not confined to the allegations in the pleading. Rather, "it is well established that in considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted." *Humphrey*, 279 F. App'x at 331. "The plaintiff bears the burden of establishing that jurisdiction exists." *Taylor v. Keycorp*, 680 F.3d 609, 612 (6th Cir. 2012). And if it cannot do so "by a preponderance of the evidence," the Court must dismiss the complaint. *Capitol Specialty Ins. Corp. v. IKO, Inc.,* 2013 WL 6196564, at *2 (W.D. Ky. Nov. 26, 2013).

## ARGUMENT

**I.     THE MEDICARE ACT DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS, WHICH ARE SUBJECT TO A MANDATORY FEDERAL ADMINISTRATIVE EXHAUSTION PROCESS.**

This case should be dismissed for lack of subject matter jurisdiction because neither named Plaintiff properly exhausted the Medicare Act's mandatory administrative review process. Ms. Hagood completed three of the required levels, but never submitted an appeal for a final determination by the Medicare Appeals Council (on behalf of the Secretary of HHS), and Ms. Barrows only completed the first level of review by a Quality Improvement Organization ("QIO"). When Congress passed the Medicare Act, it specified that all claims "arising under" Medicare must proceed through CMS's administrative review process and receive a final decision issued by the Secretary of HHS before they can be brought in federal court. 42 U.S.C. §§ 405(h), 1395w-22(g)(5); 42 C.F.R. § 422.566(b); *Harwood*, 2023 WL 424715, at 1–2 ("The Medicare

10

Act's grant of subject matter jurisdiction only permits judicial review of the final decision of the Secretary made after a hearing." (citing *Giesse*, 522 F.3d at 703–04; internal citations omitted; cleaned up)).  This exhaustion requirement ensures national uniformity by allowing the federal government to set coverage criteria for Medicare Benefits and dictate how MAOs cover those Medicare Benefits and implement the Medicare program.  Plaintiffs attempt to sidestep this mandatory administrative process by bringing their claims for Medicare Benefits under breach of contract, unjust enrichment, and state statutory claims to manufacture subject matter jurisdiction when none exists.

**A.** **The Medicare Act Requires Plaintiffs To Exhaust A Four Step Administrative Review Process Before This Court Can Hear Their Claims.**

The Medicare Act and associated federal regulations outline the only path for Medicare enrollees to challenge the denial of a request for coverage of Medicare Benefits.  The question of whether an MAO must make payment for a service that the patient believes is covered by Medicare is an "organization determination" under the Medicare Act.  42 C.F.R. § 422.566(b)(2).  So is any alleged "[r]eduction, or premature discontinuation, of a previously authorized ongoing course of treatment."  *Id*. § 422.566(b)(4).  Even an alleged failure to timely notify a member of an organization determination is itself treated as an organization determination, *id.* § 422.568(f), and therefore requires the member to follow the appeal process set forth below.  Here, where both Plaintiffs allege harm due to Humana's review and denial of coverage for their continued SNF care, they plainly attempt to litigate the validity of an organization determination.  *See Trinity Home Dialysis, Inc.*, 2023 WL 2573914, at *5 (claims for failure to reimburse challenged organization determinations and thus "clearly" arose under the Medicare Act).

Enrollees that wish to challenge an organization determination cannot go directly to court for relief.  Instead, Congress required that all such disputes be presented to, and exhausted in, an

11

administrative appeal process.  42 U.S.C. §§ 405(g)-(h); *id*. §1395w-22(g).[9]  MA plan members must complete four levels of administrative review prior to filing suit on any claim that arises under the Medicare Act.  *See id*. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq*.  First, a member who is aggrieved by an MAO's decision to end coverage for SNF care may submit a request for an appeal to an Independent Review Entity ("IRE"), such as a QIO, contracted by CMS to review the MAO's decisions.  *See* 42 C.F.R. § 422.626(a).[10]  If the QIO upholds the MAO's termination of coverage, the member has 60 days to request it reconsider its' decision.  *See id*. § 422.626(g).  If still unsatisfied after this external review, the member has a right to a hearing by a HHS Administrative Law Judge ("ALJ").  *See id*. §§ 422.600–422.602.  Finally, the member may seek review by the Medicare Appeals Council.  *See id*. § 422.608.  Only after the Medicare Appeals Council has issued its final determination on behalf of the Secretary of HHS can a beneficiary seek review in federal district court.  42 U.S.C. § 405(g)-(h); *id*. §1395w-22(g)(5); 42 C.F.R. § 422.612.  If a member chooses to file suit, she can only sue the Secretary of HHS in the federal district court for the district where she resides.  *See* 42 U.S.C. § 405(g).

---

[9] The Medicare Act's mandatory exhaustion requirement was created by cross references to the exhaustion and judicial review provisions of the Social Security Act, 42 U.S.C. §§ 405(g)-(h); *id*. § 1395ii.

[10] When the organization determination involves terminating coverage for SNF care, MA Plan members may use a process (as the named Plaintiffs did here) that "fast track[s]" their *initial* level one appeal, but they must still complete all four levels of review.  *See* 42 C.F.R. § 422.626 (describing "fast-track" initiated appeals).  Under the traditional process, a level one appeal requires members to seek reconsideration from their MAO within 60 days of the organization determination.  *See* 42 C.F.R. §§ 422.578–422.590.  If the MAO upholds the denial, the member may seek review by an IRE.  *See id*. §§ 422.592–422.596.  Steps 3 through 4 are the same as above.  *See id*. §§ 422.600–422.608.  If an enrollee misses the request window for a "fast track" appeal, the typical process outlined under §§ 422.592–422.596 applies.  *Id*. § 422.626.  Either way, plaintiffs must still complete all four levels of administrative review.  Because the named Plaintiffs here utilized the "fast-track" appeal initiation, this motion focuses on that process as outlined in CMS Regulations.

Multiple federal courts have held that the administrative appeal process set forth in 42 U.S.C. §§ 405(g)-(h), §1395w-22(g), and 42 C.F.R. §§ 422.560–422.626 is the *exclusive* process for challenging a MAO's coverage determinations, and also that exhaustion of that process is a *jurisdictional prerequisite* that must be satisfied before a federal district court can hear the Plaintiffs' claims. *See*, *e.g.*, *Tenet Healthsystem GB, Inc., v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 587 (11th Cir. 2017) (quoting *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). As the Ninth Circuit explained in 2022:

> Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare. Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a "final decision" of the Secretary and channels judicial review through § 405(g), subject to the same jurisdictional limitations imposed by § 405(h). Congress imported these requirements into § 1395w-22(g) after the Supreme Court in *Ringer* had construed virtually identical language in § 1395ff(b)(1) to mandate administrative exhaustion as a prerequisite for obtaining judicial review of a claim for Medicare benefits.

*Glob. Rescue Jets*, 30 F.4th at 914. Thus, when plaintiffs—like the named Plaintiffs here—have failed to complete the administrative exhaustion process set by Congress for contesting Medicare Benefits, the Court lacks subject matter jurisdiction and the Plaintiffs' complaint must be dismissed. *See*, *e.g.*, *id.* at 914, 919–20; *Uhm*, 620 F.3d 1138; *Williams v. Allegheny Cnty.*, 2023 WL 4238892, at *7 (W.D. Pa. June 28, 2023); *Moses v. United Healthcare Corp.*, 2020 WL 2037115 (D. Ariz. Apr. 28, 2020); *Dicrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926 (D. Haw. Sept. 16, 2015).

### B. Plaintiffs' Claims Are Subject To The Medicare Act's Exhaustion Requirements Because They Are "Inextricably Intertwined" With The Denial Of Medicare Benefits.

Every cause of action here arises under the Medicare Act because they stem from Humana's termination of continued coverage for Plaintiffs' SNF benefits. As discussed above, Medicare beneficiaries must receive a final decision from the Secretary of HHS prior to seeking judicial

review of claims "arising under" the Medicare Act.  *See* 42 U.S.C. § 405(h); *id.* § 1395ii; *Uhm*, 620 F.3d, at 1141.  A claim "arises under" the Medicare Act if the "standing and the substantive basis for the presentation of the claims" is the Medicare Act, or if it is "inextricably intertwined with a claim for Medicare benefits."  *Uhm*, 620 F.3d at 1141 (*citing Ringer,* 466 U.S. at 614–15); *see also Giesse*, 522 F.3d at 702 (Medicare Act was the "standing and substantive basis for" claim for monetary compensation for damages caused by the "arbitrary and capricious termination of [enrollee's] medical benefits").  Plaintiffs cannot circumvent the Medicare Act's exhaustion requirements by rebranding their claims for benefits under a different name.  *See*, *e.g.*, *Ringer,* 466 U.S. at 614–16, 618, 621 ("supposed 'procedural' objections" and claims for "declaratory and injunctive relief" still sought "the payment of benefits" and a "right to future payments"); *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1104 (11th Cir. 1998) (plaintiffs cannot "evad[e] administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations").

Further, a claim is "inextricably intertwined" with a claim for Medicare Benefits if it does not involve issues separate from a party's claim that it is entitled to benefits.  *Uhm*, 620 F.3d at 1143 (breach of contract claim "premised on the fact that Humana 'failed to provide prescription drug benefits as promised'" and unjust enrichment claim alleging Humana "received monies as a result of payments made by [the plaintiffs] for prescription drug benefits that Humana failed to provide" arose under the Medicare Act because they were "at bottom" creatively disguised claims for benefits."); *Glob. Rescue Jets, LLC*, 30 F.4th at 919 (consumer protection claim rested "directly on the interpretation of benefits provided under Kaisers' Medicare Advantage plans" because, on plaintiffs' theory, Kaiser's failure to pay benefits would violate its Medicare Act obligations).

For example, in *Harwood by Next Friend Adelson v. Aetna Health of Michigan*, a Medicare Part C enrollee sued her MAO based on breach of contract, specific performance, and breach of good faith and fair dealing claims after it denied pre-approval for her transfer to an inpatient rehabilitation treatment center.  2023 WL 424715 at *2.  The court explained that plaintiff's claims arose under the Medicare Act because each of the claims ultimately sought coverage for inpatient rehabilitation services.  *Id.*  Similarly, in *Hepstall v. Humana Health Plan, Inc.*, the court dismissed tort and contract claims against Humana because they had not been exhausted under the Medicare Act.  2018 WL 6588555 at *1 (S.D. Ala. Nov. 26, 2018).  That plaintiff, the husband of a MA beneficiary, alleged that Humana wrongfully denied coverage for treatments, leading to economic harm and the death of his wife.  The court concluded that the plaintiff sought "recovery for damages he suffered as a result of this refusal…[including] the costs he incurred for healthcare benefits that Humana refused to pay."  *Id.* at *8.  Even though the claim was restyled as a breach of contract and bad faith refusal to pay, the essence of the causes of action remained a "cleverly concealed claim for benefits under the Medicare Act."  *Id.*

Here, despite Plaintiffs' creative attempts to disguise their claims for benefits as a novel legal theory, each cause of action arises under the Medicare Act because the Complaint asks the Court to judge Humana's process for reviewing claims and its eventual denial of SNF coverage. For example, Plaintiffs' breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment causes of action allege Humana's processes for reviewing and investigating claims led to a denial of benefits in breach of their insurance agreements.[11]

---

[11] These "breach of contract" claims fail for another reason too: MAOs do not issue "contracts" to Medicare Enrollees. Rather, Medicare Benefits are provided pursuant to federal law and regulations, and MAOs issue their beneficiaries an "Evidence of Coverage" document, which is largely written by CMS. *See, e.g.*, 42 C.F.R. §§ 422.111, 422.2261.

*See* Compl., R. 1, PageID#: 19–23 (¶¶ 71–78) (first cause of action alleging Humana entered into an insurance agreement with the Plaintiffs, under which it owed them fiduciary duties, which it purportedly breached by failing to provide a thorough, fair, and objective investigation of each submitted claim prior to claim denial, resulting in an unreasonable denial of their claims), (¶¶ 79–88) (second cause of action alleging Humana's improper delegation of its claims review function and failure to require its agents to conduct a proper investigation of each submitted claim "constitute an unreasonable denial to pay benefits due to Plaintiffs" in violation of the implied covenant of good faith and fair dealing), (¶¶ 89–96) (third cause of action alleging that Humana was unjustly enriched when it "knowingly received and retained wrongful benefits and funds from Plaintiffs" and "arbitrarily den[ied] its insureds medical payments owed to them"). These causes of action are similar to the breach of contract and unjust enrichment claims discussed in *Uhm*, which the court found were "merely creatively disguised claims for benefits" that ultimately sought to vindicate "the same alleged promises" and "secure a remedy for Humana's alleged failure to provide benefits." 620 F.3d at 1143. Thus, the Plaintiffs' causes of action each arise under the Medicare Act because they relate directly to Humana's denial of Medicare coverage.

Plaintiffs' twenty-three remaining state statutory causes of action similarly arise under the Medicare Act. Even though Plaintiffs avoid mentioning the type of remedy they seek under their state insurance bad faith claims, questions as to whether Humana's investigations into an enrollee's medical status were "adequate," Compl., R. 1, PageID#: 27 (¶117), relate directly to whether or not a benefit should have been covered. *See*, *e.g.*, 42 C.F.R. § 409.30–409.36 (CMS regulations for coverage of posthospital SNF care); *id.* § 422.137 (MAO's use of utilization management policies and procedures). Similarly, allegations that there was "no reasonable basis" for Humana to deny members' claims, *e.g.*, Compl., R. 1, PageID#: 29 (¶133), 30 (¶147), 32 (¶162), 33 (¶169),

16

34 (¶176), are inextricably intertwined with the Medicare Act regulations discussing when SNF coverage is proper.  *See* 42 C.F.R. § 409.30–409.36 (CMS regulations for coverage of posthospital SNF care).  Determining whether an MAO acted "without any reasonable justification" in denying benefits, Compl., R. 1, PageID#: 31 (¶153), is squarely within the role of each level of the Medicare Act's administrative review process.  42 C.F.R. § 422.566(b) (Medicare beneficiaries' right to appeal organization determinations through the Medicare Act's exclusive administrative appeals process).  Thus, all of Plaintiffs' claims arise from the Medicare Act and must be properly exhausted before the Court can consider them.

### C.  Plaintiffs Did Not Fully Appeal Humana's Coverage Determinations Through Medicare's Mandatory Federal Appeals Process.

Even though all of the claims arise out of the Medicare Act, neither Ms. Barrows nor Ms. Hagood completed the four steps that the Medicare Act requires before a federal district court can hear their claims.  Thus, this Court lacks subject matter jurisdiction and should dismiss Plaintiffs' Complaint.

As noted above, the MA appeal process is governed by federal statutes and regulations that require enrollees to complete four levels of administrative review *prior* to filing suit on any claim arising under the Medicare Act.  *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*; *Uhm*, 620 F.3d at 1144 (federal courts could not assert jurisdiction over the claims when plaintiffs failed to allege that they appealed through the §405(g) process); *Harwood*, 2023 WL 424715 at *1 (complaint dismissed because plaintiff conceded she had not exhausted administrative remedies); *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222, 1234 (D.N.M. 2018) (no subject matter jurisdiction because plaintiffs conceded MA member did not appeal a denial of a liver transplant evaluation); *Alston*, 291 F. Supp. 3d at 1175–76 (no jurisdiction when member made no contention that he complied with the exhaustion requirements).  When a Medicare Advantage

enrollee's coverage of SNF benefits is terminated, she receives an initial determination from the MAO, which includes written notice of Medicare non coverage and outlines the Medicare appeals process. 42 C.F.R. § 422.568. Following notification of the denial of coverage, the enrollee may submit a request for a "fast track" appeal to an Independent Review Entity (in this case, a QIO) by noon the first day after the day of delivery of the termination notice. *Id.* § 422.626(a). If the QIO upholds the MAO's termination decision, the member has 60 days to request a Level 2 appeal, which asks the QIO to reconsider its determination. *Id.* § 422.626(g). An HHS ALJ reviews the record for Level 3 appeals that meet an amount in controversy requirement. *Id.* § 422.600. After the ALJ issues a decision, the enrollee has 60 days to appeal to the Medicare Appeals Council (MAC). *Id.* §§ 422.608, 405.1102(a)(1); Exhibit 1 at 16. The MAC's decision on a Level 4 appeal is considered a "final decision" by the Secretary of HHS. 42 C.F.R. § 422.612. It is only at this point—after the MAC issues its final decision—that the member may choose to sue the Secretary of HHS in federal court to challenge the determination. *See* 42 U.S.C. § 405(g); 42 C.F.R. § 422.612(c); *id.* § 405.1136(d)(1).

Here, the Plaintiffs have the burden of establishing subject matter jurisdiction exists. *Taylor*, 680 F.3d at 612. However, the Complaint fails to adequately allege that either of the Plaintiffs initiated the required administrative review process, much less received the required final decision by the Secretary of HHS. The Plaintiffs have failed to carry their burden. The only mention of *any* appeal in the entire Complaint is the threadbare allegation that Ms. Barrows and her family "vigorously appealed" Humana's denial of coverage. Compl., R. 1, PageID #: 13 (¶44). There is no mention of any appeals taken by Ms. Hagood. The Plaintiffs have not adequately shown that this Court has jurisdiction, and Plaintiffs case should be dismissed.

18

Going one step further, the administrative record reflects *neither* Plaintiff completed the administrative review process.   On March 17, 2023, an ALJ issued a decision denying Ms. Hagood's Level 3 appeal and upholding Humana's coverage determination.   Exhibit 1 at 14 (applying Medicare regulations and CMS guidance on SNF coverage to find that Humana "properly terminated coverage.").   It appears Ms. Hagood did not appeal the ALJ's determination to the MAC for a final determination on behalf of the Secretary of HHS within the 60-day window. As the final level of review was never exhausted, the agency never issued a final decision.   Further, the administrative record shows Ms. Barrows did not appeal Humana's coverage determination past the Level 1 expedited review, completed by the QIO.   On December 11, 2021, Ms. Barrows received a Level 1 determination from the QIO, which indicated that it agreed with Humana's coverage determination because "[t]here [were] no medical issues to support the need for daily skilled nursing care" and Ms. Barrows "no longer me[]t the criteria for a Skilled Nursing Facility." Exhibit 2 at 3.   The administrative record does not show that Ms. Barrows requested that the QIO reconsider its decision or tried to complete any of other levels required by the Medicare Act.   Thus, the Court lacks subject matter jurisdiction over both Plaintiffs' claims.   *Alston.*, 291 F. Supp. 3d at 1175–76.   The Medicare Act is clear—the administrative appeal process is the proper forum for these complaints to be heard.   *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*   Plaintiffs cannot restyle their appeals to avoid that process and forum shop for relief in this Court instead.

**D.     Even If Plaintiffs Had Exhausted The Mandatory Appeals Process, The Secretary Of Health And Human Services—Not Humana—Would Be The Proper Defendant.**

This case should be dismissed because, even if Plaintiffs had fully exhausted the exclusive administrative appeal process set by Congress, the Plaintiffs sued the wrong defendant.   When Congress passed the Medicare Act, it specified beneficiaries could seek review of final determinations from the Secretary of HHS—not their MAO.   *See* 42 U.S.C. § 405(g); 42 C.F.R.

19

§ 422.612(c); *id.* § 405.1136(d)(1); *see also Ebert*, 2022 WL 509117, at *2 ("Even though the insurer . . . is the opposing party during the administrative review proceedings at the agency level, once a dispute like this goes to court, the Secretary of HHS is the party responsible for defending the agency's decision below.") (collecting cases).  Thus, the Plaintiffs in this case filed their Complaint against the wrong defendant.  *See Madsen v. Kaiser Found. Health Plan, Inc.*, 2009 WL 1537878, at *4 (S.D. Cal. June 2, 2009) ("In any civil action seeking judicial review of a decision of the Medicare Appeals Council, the Secretary of HHS, in his or her official capacity, is the proper defendant.") (citing 42 C.F.R. § 405.1136(d)(1)).  Therefore, the Complaint should be dismissed.

II.  **THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST HUMANA BECAUSE THEY ARE EXPRESSLY PREEMPTED BY THE MEDICARE ACT.**

The Court must dismiss Plaintiffs' claims because they are preempted by the federal statutes and regulations that govern when MAOs must cover post-acute care, and how they make coverage determinations.

A.  **The Medicare Act Imposes A Sweeping Preemption Provision.**

To preserve the federal government's ability to uniformly administer federal benefits and to avoid inconsistent application of the Medicare Program across the states, Congress expressly preempted any application of state statutes and causes of action that relate to Medicare coverage, rules, and regulations when it passed the Medicare Modernization Act in 2003.  As the Ninth Circuit explained in *Uhm*:

> Prior to the 2003 amendments, the preemption clause provided that federal standards would supersede state law and regulations "with respect to" MA plans only "to the extent such law or regulation is inconsistent with such standards" and specified several "standards specifically superseded." 42 U.S.C. § 1395w-26(b)(3)(A)(2000).  The 2003 amendments struck both that qualifying clause and the enumerated standards from the provision.  *See* 42 U.S.C. § 1395w-26(b)(3)(A)(2003). The Conference Report accompanying the Act explains that, in striking the clause, Congress intended to broaden the preemptive effects of the Medicare Statutory regime[.]

*Uhm*, 620 F.3d at 1149 (citing H.R. Rep. No. 108-391, at 557 (2003) (Conf. Rep.) ("[T]he MA program is a federal program operated under Federal rules. State laws, do not, and should not apply[.]")). After the 2003 amendments, Medicare Part C's preemption provision now provides:

> The standards established under this part shall supersede *any State law or regulation* (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (emphasis added); *see also* 42 C.F.R. § 422.402. Multiple circuits have explained that the Medicare Act's amended preemption provision is "akin to field preemption." *See Mulready*, 78 F.4th at 1200, 1205 (describing Part D's preemption provision—which is identical to Part C's—as "unmistakably broad" and "expansive" such that field preemption is proper); *Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Hernández*, 58 F.4th 5, 12 (1st Cir. 2023) (explaining the 2003 amendment expanded the scope of preemption "beyond those laws that directly conflict with federal standards"); *Uhm*, 620 F.3d at 1150 ("Congress intended to expand the preemption provision beyond those state laws and regulations inconsistent with the enumerated standards").

Given the expansive language of the preemption provision, a conflicting state law standard, or "specific federal-state overlap" is not necessary for a state law to be preempted. *See Mulready*, 78 F.4th at 1208 (holding that an Oklahoma state statute, which purported to require pharmacy benefit managers to allow all Oklahoma pharmacies willing to accept the PBM's preferred-network terms, was preempted by the Medicare Act because the law "function[ed] as a regulation of a Part D plan itself." (cleaned up)). Instead, any state law-related cause of action and common law cause of action that relates to a Medicare standard is preempted. *See Rudek v. Presence Our Lady of Resurrection Med. Ctr.*, 2014 WL 5441845, at *4 (N. D. Ill. Oct. 27, 2014) (explaining the preemption provision applies to state common law because it would be "odd" for Congress to preempt state statutes and regulations but be "unconcerned about the greater risks of inconsistency

and variability posed by the application of state law"); 40 Fed. Reg. at 4665 ("all State standards, *including those established through case law*, are preempted to the extent they specifically would regulate MA plans") (emphasis added)).

When applying the broad field preemption provision, courts have explained "at the very least, any state law or regulation falling within the specified categories [from before the 2003 amendment] and 'inconsistent' with a standard established under the Act remains preempted." *See Uhm*, 620 F.3d at 1149–50 (common law fraud and state consumer protection claims were preempted when, "at bottom," they complained about marketing activities regulated under Medicare because a court's ruling on them had the potential to "directly undermine CMS's prior determination" and its "ability to create standards" that regulate Medicare entities); *Hernández,* 58 F.4th 5, at 12–14 (Puerto Rico statute that required MAOs to pay healthcare providers a minimum rate preempted due to conflict with federal Medicare standards); *Mulready*, 78 F.4th at 1208–09; *Williams*, 2023 WL 4238892, at *7 (breach of contract and breach of good faith and fair dealing claim against MAO preempted by Medicare Act); *Alston*, 291 F. Supp. 3d at 1173 (state-law claims alleging negligence, respondeat superior, intentional infliction of emotional distress, and breach of contract against MAO were preempted); *Potts v. Rawlings Co.,* 897 F. Supp. 2d 185, 199 (S.D.N.Y. 2012) (state anti-subrogation laws preempted by Medicare Act); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1090 (N.D. Cal. 2011) (state-law unfair competition and consumer protection claims preempted by the Medicare Act); *Quishenberry v. UnitedHealthcare, Inc.*, 532 P.3d 239, 249 (Cal. 2023) (negligence claims based on MAO's alleged state law duty to ensure member received skilled nursing benefits preempted because the MAO's duty turned on a determination of whether the member qualified for SNF care and were therefore duplicative of MA standards); *Morrison v. Health Plan of Nev., Inc.*, 130 Nev. 517, 523 (Nev. 2014)

(state-law negligence claim against MAO concerning selection and supervision of participating providers was preempted by the Medicare Act).

At minimum, the Medicare Act preempts a state law or cause of action when "the conduct underlying the plaintiffs' allegations and state law claims [is] governed by federal regulatory standards."  For instance, in *Hepstall v. Humana Health Plan, Inc.*, the court explained that it could not hear claims that sought to retroactively second-guess Medicare coverage determinations. 2018 WL 6588555, at \*6–7.  In that case, a member's husband sued Humana to recover "the value of his premiums paid in exchange for insurance that was not as represented, for the costs of healthcare which Defendant refused to pay, and for mental anguish or emotional suffering" as well as punitive damages for his wife's wrongful death.  *Id.* at \*4.  The court explained that each of those claims was preempted because they all were "based on or ar[o]se from Defendant's refusal or failure to pay for certain medical services," an area substantially regulated by the Medicare Act, CMS regulations, and coverage guidelines.  *Id.* at \*7.  Like in *Hepstall*, Plaintiffs' claims here relate to, and conflict with, existing Medicare standards, so the Medicare Act's preemption provision requires this Court dismiss them.

### B.     The Medicare Act Preempts Plaintiffs' Claims Because, "at Bottom" They Are About Coverage Determinations Addressed By Medicare's Vast Regulatory Scheme.

Plaintiffs' causes of action are preempted by the Medicare Act because each is, at bottom, about a coverage determination concerning Medicare Benefits:  Each cause of action is based on the allegation that Humana improperly reviewed Ms. Hagood's and Ms. Barrows' claims for benefits, *see, e.g.*, Compl., R. 1, PageID#: 20–21 (¶¶ 74, 76, 82), 24 (¶¶ 99–102), leading to a denial of coverage for their post-acute care, *see id.* at 20–21 (¶¶ 77, 85)  23–26 (¶¶ 94, 100–02, 109–10, 114),  29–36 (¶¶ 136, 140, 147, 153, 158, 162, 169, 173, 176, 180, 184, 189, 192), 37–38 (¶¶ 201–02), 40–43 (¶¶ 215, 220, 225, 228-30, 233–35).  As *Hepstall* explained, whether a benefit

is covered by a MA plan is the subject of federal standards, which compel MAOs to provide enrollees with "all services that are covered by Part A and Part B of Medicare", and to comply with "CMS's national coverage determinations" and its "general coverage guidelines." 2018 WL 6588555 at *7 (citing 42 C.F.R. §§ 422.101(a)–(b)); *see also* Compl., R. 1, PageID#: 8 (¶23).

Thus, claims that Humana wrongly denied coverage for post-acute care are preempted by the extensive Medicare rules, regulations, and guidance that govern each aspect of an MAO's authorization for post-acute care. *See*, *e.g.*, 42 C.F.R. § 409.30 (basic pre-admission and admission requirements); § 409.31 (level of care requirement); § 409.32 (criteria and need for skilled services); § 409.33 (examples of what qualifies as skilled nursing services); and § 424.20 (plan of treatment and certification requirements for post hospital SNF care). Plaintiff's claims that Humana improperly investigated whether coverage should have been required run headlong into CMS regulations that explain how MAOs can use utilization management policies and procedures to make coverage determinations. *See* 42 C.F.R. § 422.112(a)(6)(ii); § 422.137. Allegations that Humana wrongly delegated its responsibility to make coverage decisions are similarly "governed by standards set forth in regulations promulgated by CMS." *Hepstall*, 2018 WL 6588555, at *7; s*ee* 42 C.F.R. § 422.566(d) (requiring adverse coverage determinations to be reviewed by an "appropriate health care professional"); *Alston,* 291 F. Supp. 3d at 1174–75 (finding plaintiff's negligence cause of action, which alleged that an insurer breached its "duty to conduct a reasonable investigation based on all available information and affirm or deny coverage within a reasonable time" was preempted because a state-law based decision turning on reasonableness would be inconsistent with Medicare Part D standards). This Court cannot apply state causes of action to determine whether Humana properly evaluated the Plaintiffs' need for continued SNF care without second-guessing Humana's administration of federal Medicare standards.

For example, in *Snyder v. Prompt Medical Transportation, Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019), the Indiana Court of Appeals held that a state-law wrongful death claim against an MAO was preempted.  There, as here, the plaintiff alleged that the MAO wrongfully denied Medicare Benefits (an air ambulance transport to another hospital).  The trial court dismissed the MAO from the case, finding the claims preempted.  Affirming that decision, the Court of Appeals noted that federal regulations govern the authorization of air ambulance transportation.  *Id.* at 653.  As the Court of Appeals further noted:

> [T]o resolve this argument, a court would have to apply a state law standard of care to a coverage determination governed by federal law.  Indeed, if allowed to stand, the Estate's complaint could theoretically allow [the MAO] to be found negligent even if it fully complied with all federal laws and regulations.  Under these circumstances, we can only conclude that the Estate's claims, which sound in state law that must be applied with respect to Medicare Part C, are preempted pursuant to Part C's express preemption provision.

*Id*.  The Plaintiffs here should not be allowed to forum-shop their way to a different outcome by "creatively" cloaking their complaint over denial of Medicare Benefits as causes of action arising under state statutes or common law.  *Uhm*, 620 F.3d at 1143; *Blue Cross & Blue Shield of Ala.*, 156 F.3d at 1104.  These claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: March 20, 2024                    Respectfully Submitted,

*/s/ Michael P. Abate*

Michael P. Abate
Burt Anthony Stinson
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
E-mail: mabate@kaplanjohnsonlaw.com
E-mail: cstinson@kaplanjohnsonlaw.com

Kevin D. Feder (*pro hac vice*)
Jason Yan (*pro hac vice*)
Gillian Mak (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:  202-383-5164
E-mail: kfeder@omm.com
E-mail: jyan@omm.com
E-mail: gmak@omm.com

*Attorneys for Defendant Humana Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 20, 2024, a copy of the foregoing was electronically filed with the Court of Clerk using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Michael P. Abate*
*Counsel for Defendant*
