## THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

### *ELECTRONICALLY FILED*

| | |
|---|---|
| JOANNE BARROWS and SUSAN HAGOOD, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>HUMANA, INC.,<br><br>       Defendant. | Civil Action No. 3:23-cv-00654-RGJ |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Michael P. Abate
Burt Anthony Stinson
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
E-mail: mabate@kaplanjohnsonlaw.com
E-mail: cstinson@kaplanjohnsonlaw.com

Kevin D. Feder
Jason Yan
Gillian M. Mak
O'MELVENY & MYERS LLP
1625 Eye Street NW, 12061
Washington, DC 20006
Telephone:  202-383-5164
Facsimile: 202-383-5414
E-mail: kfeder@omm.com
E-mail: jyan@omm.com
E-mail: gmak@omm.com

*Attorneys for Defendant*

i

## TABLE OF CONTENTS

Page

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................. 5

I.     THE MEDICARE ADVANTAGE PROGRAM ...................................................... 5

     A.    Medicare Advantage Organizations are Subject to Complex
Federal Laws and Regulations Set By The Medicare Act. ........................ 5

     B.    The Medicare Act Requires Plaintiffs To Exhaust A Four Step
Administrative Review Process Before This Court Can Hear Their
Claims. ...................................................................................................... 6

II.    PLAINTIFFS' CLAIMS FOR SKILLED NURSING AND INPATIENT
REHABILITATION FACILITY BENEFITS ........................................................ 7

STANDARD OF REVIEW ............................................................................................... 10

ARGUMENT .................................................................................................................... 12

I.     THE MEDICARE ACT DEPRIVES THIS COURT OF SUBJECT
MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS, WHICH
ARE SUBJECT TO A MANDATORY FEDERAL ADMINISTRATIVE
EXHAUSTION PROCESS. ................................................................................. 12

     A.    Plaintiffs' Claims Are Subject To The Medicare Act's Exhaustion
Requirements Because They Are "Inextricably Intertwined" With
The Denial Of Medicare Benefits. ........................................................... 13

     B.    Plaintiffs Did Not Fully Appeal Humana's Coverage
Determinations Through Medicare's Mandatory Federal Appeals
Process. .................................................................................................... 18

     C.    Even If Plaintiffs Had Exhausted The Mandatory Appeals Process,
The Secretary Of Health And Human Services—Not Humana—
Would Be The Proper Defendant ............................................................ 19

II.    THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST
HUMANA BECAUSE THEY ARE EXPRESSLY PREEMPTED BY
THE MEDICARE ACT. ...................................................................................... 20

     A.    The Medicare Act Imposes A Sweeping Preemption Provision. .............. 20

     B.    The Medicare Act Preempts Plaintiffs' Claims Because, "At
Bottom," They Are About Coverage Determinations Addressed By
Medicare's Vast Regulatory Scheme. ...................................................... 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. UnitedHealth Servs., Inc.,*
  291 F. Supp. 3d 1170 (D. Mont. 2018) ................................................................. 18, 19, 22, 24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 10, 16

*Ashland, Inc. v. Oppenheimer & Co.,*
  648 F.3d 461 (6th Cir. 2011) .................................................................................... 3, 11

*Barret v. Harrington,*
  130 F.3d 246 (6th Cir. 1997) .................................................................................... 1, 11

*Bassett,*
  528 F.3d .................................................................................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................. 11

*Capitol Specialty Ins. Corp. v. IKO, Inc.,*
  2013 WL 6196564 (W.D. Ky. Nov. 26, 2013) ....................................................... 11

*Cathedral Rock of N. College Hill, Inc. v. Shalala,*
  223 F.3d 354 (6th Cir. 2000) .................................................................................... 4

*Dicrescenzo v. UnitedHealth Grp. Inc.,*
  2015 WL 5472926 (D. Haw. Sept. 16, 2015) ......................................................... 13, 15

*Ebert v. Anthem Health Plans of Ky, Inc.,*
  2022 WL 509117 (W.D. Ky. Feb. 18, 2022) ........................................................... 2, 20

*Estate of Gene B. Lokken, et al. v. UnitedHealth Grp., Inc., et al.,*
  No. 0:23-cv-03514-JRT-DTS (D. Minn. Nov. 14, 2023) ....................................... 1

*Ex parte Blue Cross & Blue Shield of Ala.,*
  90 So.3d 158 (Ala. 2012) ......................................................................................... 15, 17

*Giesse v. Sec. Dept. Health & Hum. Servs.,*
  522 F.3d 697 (6th Cir. 2008) .................................................................................... 3, 12, 13

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.,*
  30 F.4th 905 (9th Cir. 2022) .................................................................................... 2, 13, 14

*Haaland v. Presbyterian Health Plan, Inc.,*
  292 F. Supp. 3d 1222 (D.N.M. 2018) ...................................................................... 18

*Harwood by Next Friend Adelson v. Aetna Health of Michigan,*
  2023 WL 424715 ....................................................................................................... 12, 14, 18

*Heckler v. Ringer,*
  466 U.S. 602 (1984) ................................................................................................. 12, 13, 14

*Hepstall v. Humana Health Plan, Inc.,*
  2018 WL 6588555 (S.D. Ala. Nov. 26, 2018) ......................................................... passim

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
  832 F.3d 1229 (11th Cir. 2016) ............................................................ 5

*Humphrey v. U.S. Att'y Gen.'s Office*,
  279 F. App'x 328 (6th Cir. 2008) ...................................................... 3, 11

*Madsen v. Kaiser Found. Health Plan, Inc.*,
  2009 WL 1537878 (S.D. Cal. June 2, 2009) ....................................... 20

*Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Hernández*,
  58 F.4th 5 (1st Cir. 2023) ............................................................... 21, 22

*Morrison v. Health Plan of Nev., Inc.*,
  130 Nev. 517 (Nev. 2014) .................................................................. 23

*Morrison v. Health Plan of Nev., Inc.*,
  328 P.3d 1165 (Nev. 2014) .................................................................. 4

*Moses v. United Healthcare Corp.*,
  2020 WL 2037115 (D. Ariz. Apr. 28, 2020) ................................... 13, 15

*Pharm. Care Mgmt. Ass'n v. Mulready*,
  78 F.4th 1183 (10th Cir. 2023) ................................................. 4, 21, 22

*Phillips v. Kaiser Found. Health Plan, Inc.*,
  953 F. Supp. 2d 1078 (N.D. Cal. 2011) ............................................ 22

*Potts v. Rawlings Co.*,
  897 F. Supp. 2d 185 (S.D.N.Y. 2012) ............................................... 22

*Powell v. Comm'r of Soc. Sec.*,
  2019 WL 4686491 (E.D. Mich. Sept. 26, 2019) .................................. 2

*Quishenberry v. UnitedHealthcare, Inc.*,
  532 P.3d 239 (Cal. 2023) ................................................................... 23

*Rudek v. Presence Our Lady of Resurrection Med. Ctr.*,
  2014 WL 5441845 (N. D. Ill. Oct. 27, 2014) ..................................... 21

*Snyder v. Prompt Medical Transportation, Inc.*,
  131 N.E.3d 640 (Ind. Ct. App. 2019) ............................................... 25

*Tackett v. M & G Polymers, USA, LLC*,
  561 F.3d 478 (6th Cir. 2009) ............................................................ 10

*Taylor v. Keycorp*,
  680 F.3d 609 (6th Cir. 2012) ....................................................... 11, 18

*Tenet Healthsystem GB, Inc., v. Care Improvement Plus S. Cent. Ins. Co.*,
  875 F.3d 584 (11th Cir. 2017) .......................................................... 12

*Toth v. Grand Trunk R.R.*,
  306 F.3d 335 (6th Cir. 2002) .............................................................. 3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
  2023 WL 2573914 (5th Cir. Mar. 20, 2023) ............................................................... 3

*Uhm v. Humana, Inc.*,
  620 F.3d 1134 (9th Cir. 2010) ................................................................... passim

*United States v. An Undetermined Quantity of An Article of Drug Labeled As Benylin
  Cough Syrup*,
  583 F.2d 942 (7th Cir. 1978) ..................................................................... 2

*United States v. Blue Cross & Blue Shield of Ala., Inc.*,
  156 F.3d 1098 (11th Cir. 1998) ........................................................... 14, 25

*Williams v. Allegheny Cnty.*,
  2023 WL 4238892 (W.D. Pa. June 28, 2023) ............................................. 13, 22

*Zhang v. UnitedHealthCare*,
  2021 WL 3270319 (D. Ariz. July 30, 2021) ................................................ 15

**Statutes**

42 U.S.C. § 1395ii .......................................................................................... 13

42 U.S.C. § 1395w-22(g) .................................................................... 6, 18, 19

42 U.S.C. § 1395w-22(g)(5) ............................................................ 2, 7, 12, 19

42 U.S.C. § 1395w-26(b)(1) (2012) ........................................................... 4

42 U.S.C. § 1395w-26(b)(3) ............................................................... 4, 6, 21

42 U.S.C. § 405(g) ............................................................................ passim

42 U.S.C. § 405(h) ............................................................................ passim

**Other Authorities**

CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization
  Management Requirements in CMS Final Rule (CMS-4201-F) (Feb. 6, 2024) ............... 6

H.R. Rep. No. 108-391 (2003) (Conf. Rep.) ....................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 10

Fed. R. Civ. P. 12(b)(1) ............................................................................ 11

**Regulations**

40 Fed. Reg. at 4665 ............................................................................... 21

42 C.F.R. § 405.1136(d)(1) ................................................................... 2, 20

42 C.F.R. § 405.920 *et seq.* ..................................................................... 2

42 C.F.R. § 409.30 ............................................................................. 5, 24

42 C.F.R. § 409.30–409.36 .......................................................................... 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

42 C.F.R. § 409.31 ................................................................................................. 5, 24

42 C.F.R. § 409.32 ................................................................................................. 5, 24

42 C.F.R. § 409.33 ..................................................................................................... 24

42 C.F.R. § 412.622(a)(3) ...................................................................................... 5, 17

42 C.F.R. § 422.1 *et seq.* ............................................................................................ 5

42 C.F.R. § 422.101(a) ............................................................................................... 24

42 C.F.R. § 422.101(b) ............................................................................................... 24

42 C.F.R. § 422.111 ......................................................................................... 6, 16, 25

42 C.F.R. § 422.112(a)(6)(ii) ..................................................................................... 24

42 C.F.R. § 422.137 ............................................................................................. 17, 24

42 C.F.R. § 422.2261 .................................................................................................. 16

42 C.F.R. § 422.2267 .................................................................................................. 24

42 C.F.R. § 422.402 ........................................................................................... 4, 6, 21

42 C.F.R. § 422.560 *et seq.* ............................................................................. 6, 18, 19

42 C.F.R. § 422.566(b) .......................................................................................... 12, 17

42 C.F.R. § 422.566(b)(2) ............................................................................................ 6

42 C.F.R. § 422.566(b)(4) ............................................................................................ 6

42 C.F.R. § 422.566(d) ............................................................................................... 24

42 C.F.R. § 422.568(f) .................................................................................................. 6

42 C.F.R. § 422.608 ...................................................................................................... 7

42 C.F.R. § 422.612 ................................................................................................. 7, 19

42 C.F.R. § 422.612(c) ............................................................................................ 2, 20

42 C.F.R. § 422.626 ...................................................................................................... 7

42 C.F.R. § 424.20 .................................................................................................. 5, 24

42 C.F.R. §§ 422.578–422.590 ..................................................................................... 7

42 C.F.R. §§ 422.592–422.596 ..................................................................................... 7

42 C.F.R. §§ 422.600–422.602 ..................................................................................... 7

70 Fed. Reg. at 4665 ................................................................................................ 4, 6

Medicare Program: Establishment of the Medicare Advantage Programs, 70 Fed. Reg.
    4588, 4589 (Jan. 28, 2005) ..................................................................................... 1

Defendant Humana Inc. ("Humana") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the First Amended Class Action Complaint (R.37) ("Amended Complaint") filed by Plaintiffs Joanne Barrows, Susan Hagood, Sharon Merkley, Lorraine Kohl, and Dolly Balani (collectively "Plaintiffs").  In short, Plaintiffs cannot forum-shop their way to a different Medicare coverage determination.  Nor can Plaintiffs creatively leverage state-law causes of action to challenge the coverage criteria and processes used for Medicare Benefits, which are exclusively governed by federal law.

## **INTRODUCTION**

Plaintiffs are Medicare Part C[1] enrollees who received Medicare Benefits through a Medicare Advantage plan administered by Humana.  Plaintiffs allege that Humana wrongly denied Plaintiffs' requests for coverage of certain Medicare Benefits.  Plaintiffs' Amended Complaint— which is heavily copied-and-pasted from a similar action filed by the same law firm against another Medicare Advantage Organization ("MAO")[2]—includes sensationalized allegations that Humana makes post-acute care coverage determinations based solely on the output of an Artificial Intelligence program.  Plaintiffs' allegations are false.[3]  But, even accepting Plaintiffs' allegations as true at this stage, Plaintiffs' Amended Complaint must be dismissed for two reasons:

---

[1] Medicare Part C is also known as Medicare Advantage and was previously known as Medicare+Choice.  *See* Medicare Program: Establishment of the Medicare Advantage Programs, 70 Fed. Reg. 4588, 4589 (Jan. 28, 2005).

[2] *Estate of Gene B. Lokken, et al. v. UnitedHealth Grp., Inc., et al.*, ECF 1, No. 0:23-cv-03514-JRT-DTS (D. Minn. Nov. 14, 2023).

[3] Humana acknowledges that the Court is required to "take as true all factual allegations in the complaint."  *See Barret v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997).  Humana notes, however, that if this case were to proceed past the motion to dismiss stage, the facts would unambiguously show that the Plaintiffs' allegations that Humana uses the nH Predict tool to make adverse coverage determinations without human intervention have no merit.

1

*First*, the Court lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims because Plaintiffs have failed to exhaust the Medicare Act's exclusive administrative appeal process for challenging an MAO's coverage determination.  Under the Medicare Act and Centers for Medicare and Medicaid Services ("CMS") regulations, any Medicare beneficiary who disagrees with a benefit determination by her MAO must exhaust a four-step mandatory administrative review process that concludes with potential review by the Medicare Appeals Council, a federal agency authorized to issue final benefit determinations on behalf of the Secretary of Health and Human Services ("HHS").  *See* 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 405.920 *et seq.*; *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 911 (9th Cir. 2022).  If an enrollee disagrees with the Medicare Appeals Council's determination on behalf of the Secretary, she can seek relief in federal court only by filing a lawsuit against the Secretary challenging the agency's administrative determination; she cannot sue her MAO.  *See* 42 U.S.C. §§ 405(g), 1395w-22(g)(5); 42 C.F.R.  §§ 405.1136(d)(1), 422.612(c);  *Ebert v. Anthem Health Plans of Ky, Inc.*, 2022 WL 509117, at *2 (W.D. Ky. Feb. 18, 2022).

With this lawsuit, Plaintiffs seek to sidestep the Medicare Act's exclusive administrative appeal process.  Indeed, each of the named Plaintiffs has only partially completed Medicare Part C's exclusive four-step administrative appeal process.  Plaintiffs Susan Hagood and Dolly Balani each completed Level 3 and received decisions from HHS Administrative Law Judges upholding Humana's Medicare coverage determination; they did not complete Level 4.[4]

---

[4] *See* Exhibit 1, Sealed Filing, R.30 (the ALJ Decision for Ms. Hagood's appeal) and Exhibit 3 (the ALJ Decision for Ms. Balani's appeal).  The Court may take judicial notice of an ALJ decision and evaluate the administrative record without converting this motion into one for Summary Judgment.  "[T]he decision of an ALJ is a proper subject of judicial notice."  *United States v. An Undetermined Quantity of An Article of Drug Labeled As Benylin Cough Syrup*, 583 F.2d 942, 946 n.3 (7th Cir. 1978);  *see also Powell v. Comm'r of Soc. Sec.*, 2019 WL 4686491, at *4 (E.D. Mich. Sept. 26, 2019) (the findings of an "ALJ decision cannot reasonably be questioned."

Humana's organization determinations were similarly upheld on Plaintiffs JoAnne Barrows[5] and Lorraine Kohl's[6] Level 1 appeals; they did not complete Levels 2, 3, or 4. Finally, Plaintiff Sharon Merkley submitted multiple Level 1 appeals that were resolved in her favor. Ms. Merkley appealed the two remaining appeals to Level 2, where an Independent Review Entity upheld Humana's coverage determination.[7] Ms. Merkley did not complete Levels 3 or 4.

Unhappy with the decisions in their administrative appeals, Plaintiffs now attempt to pursue state-law causes of action in this Court. But, as numerous other courts have held, federal courts lack subject-matter jurisdiction to hear claims that attempt to bypass the administrative appeal process. *See, e.g.*, *Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914, at *5 (5th Cir. Mar. 20, 2023) (per curiam); *Giesse v. Sec. Dept. Health & Hum. Servs.*, 522 F.3d 697, 702–03 (6th Cir. 2008)

---

(taking judicial notice of ALJ decision)); *cf. Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority").

[5] *See* Exhibit 2, Sealed Filing, R.30 (the QIO determination for Ms. Barrows' appeal). Because the Complaint alleges that "Ms. Barrows and her family vigorously appealed Humana's denial, but their efforts were unsuccessful," Amend. Compl., R.37, PageID#: 218, this Court is free to consider the referenced appeal determinations. *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (citation omitted). Moreover, because this issue goes to the Court's subject-matter jurisdiction, the Court is free to consider documents bearing on exhaustion even if they were not referenced. *See Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

[6] *See* Exhibit 4 (January 6, 2023 Level 1 determination upholding Humana's decision to end Ms. Kohl's SNF coverage and March 3, 2023 Level 1 determination upholding Humana's decision to end Ms. Kohl's SNF coverage). Because these decisions are referenced in the Amended Complaint (R.37, PageID#: 226–227), this Court is free to consider them. Humana has not located the letter allegedly sent by Ms. Kohl's family to Humana directly on or around January 7, 2023, or Humana's response to Ms. Kohl's direct appeal, but assumes these allegations are true for the purposes of responding to the Amended Complaint.

[7]*See* Exhibit 5 (Ms. Merkley's first Level 2 determination and Ms. Merkley's second Level 2 determination by a QIO). Because these decisions are referenced in the Amended Complaint (R.37, PageID#: 223, 225), this Court is free to consider them. Although Humana accepts the allegation that the QIO continued to uphold Humana's denial of Ms. Merkley's Level 2 appeal for the purposes of responding to the Amended Complaint, Humana's appeal records indicate that Ms. Merkley's second Level 2 appeal was successful.

("[S]ection 405(h) clearly prohibits judicial review of plaintiff's claims [that medical benefits were allegedly arbitrarily and capriciously terminated] absent exhaustion of available administrative remedies."); *Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000).

*Second*, the Court must dismiss this case because the Medicare Act expressly preempts Plaintiffs' state-law causes of action.  To ensure uniform administration of the Medicare Act nationwide, Congress expressly preempted any state law or cause of action related to Medicare Act standards.  *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402.  Specifically, Congress intended to "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations," *id.*, "including those established through case law," 70 Fed. Reg. at 4665, state "common law," and statutory claims, *Uhm*, 620 F.3d at 1156.  The Medicare Act's preemption provision is broad and mandates something "akin to field preemption."  *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1206 (10th Cir. 2023).

Plaintiffs raise a patchwork of state-law causes of action that attempt to scrutinize Humana's review and denial of their claims seeking Medicare Benefits for skilled nursing facility ("SNF") and inpatient rehab facility ("IRF") care.  But Humana's Medicare coverage determinations are not governed by state law.  Instead, "extensive regulations" set by CMS, *e.g, Morrison v. Health Plan of Nev., Inc.*, 328 P.3d 1165 (Nev. 2014) (citing 42 U.S.C. § 1395w-26(b)(1) (2012)), dictate the appropriate process for MAOs to review claims for Medicare Benefits and make coverage determinations for post-acute care benefits under the Medicare Act.  Plaintiffs ask this Court to apply twenty-four states' standards, inviting outcomes that conflict with the federal government's Medicare rules.  That is the opposite of what the Medicare Act's preemption provision requires, and why Plaintiffs' claims must be dismissed.

Plaintiffs' Amended Complaint should be seen for what it is:  an attempt to forum shop to this District to ask this Court to override federal law and apply state-law requirements that Congress and CMS chose not to impose.  Plaintiffs' Amended Complaint must be dismissed.

## BACKGROUND

## I.    THE MEDICARE ADVANTAGE PROGRAM

### A.    Medicare Advantage Organizations are Subject to Complex Federal Laws and Regulations Set By The Medicare Act.

In 1997, Congress enacted Part C of Title XVII of the Social Security Act, known as the Medicare Act.  The Medicare Act gives Medicare beneficiaries the option to receive benefits in one of two ways.  An eligible person may participate in Medicare Parts A and B and have "CMS directly pay medical providers for [her] hospital and outpatient care." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).  Alternatively, a Medicare enrollee may choose to participate in a Medicare Part C plan, known as a Medicare Advantage plan, and have an MAO—rather than CMS—provide her Medicare Benefits. *See id.*  Each of the named Plaintiffs elected to enroll in a Medicare Advantage plan administered by Humana.  Amend. Compl., R.37, PageID#: 208–09.

MAOs are heavily regulated entities whose activities are governed exclusively by the Medicare Act and CMS's implementing regulations. *See*, *e.g.,* 42 C.F.R. § 422.1 *et seq*.  For instance, the Medicare Act and CMS regulations dictate *when* an MAO must cover medical services, *how* it can make those coverage determinations, and the exclusive process for an enrollee to appeal if her coverage is denied. *See*, *e.g.,* 42 C.F.R. § 409.30 (basic pre-admission and admission requirements), § 409.31 (level of care requirement for SNFs), § 409.32 (criteria and need for skilled services), § 424.20 (plan of treatment and certification requirements for post hospital SNF care); § 412.622(a)(3) (criteria dictating when IRF care is "reasonable and

necessary") and § 422.111 (MAOs' disclosure requirements) (effective June 3, 2024); s*ee also* CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization Management Requirements in CMS Final Rule (CMS-4201-F) at 2 (Feb. 6, 2024) ("An algorithm or software tool may be used to assist MA plans in making coverage determinations, but it is the responsibility of the MA organization to ensure that the algorithm or artificial intelligence complies with all applicable rules for how coverage determinations by MA organizations are made."). Congress ensured uniform implementation of this nationwide program by expressly preempting any state laws or causes of action that relate to, challenge, or regulate MAOs' compliance with Medicare standards. *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402; 70 Fed. Reg. at 4665.

**B.      The Medicare Act Requires Plaintiffs To Exhaust A Four Step Administrative Review Process Before This Court Can Hear Their Claims.**

The Medicare Act and associated federal regulations also outline the only path for Medicare enrollees to challenge the denial of a request for coverage of Medicare Benefits. The question of whether an MAO must make payment for a service that the patient believes is covered by Medicare is an "organization determination" under the Medicare Act. 42 C.F.R. § 422.566(b)(2). So is any alleged "[r]eduction, or premature discontinuation, of a previously authorized ongoing course of treatment." *Id.* § 422.566(b)(4). Even an alleged failure to timely notify an enrollee of an organization determination is itself treated as an organization determination, *id.* § 422.568(f), and therefore requires the enrollee to follow the appeal process set forth below.

Enrollees who wish to challenge an MAO's organization determination cannot go directly to federal or state court. Instead, Congress required that all such disputes must first be presented to, and exhausted in, a four-step administrative appeal process. 42 U.S.C. §§ 405(g)-(h); *id.* §1395w-22(g); 42 C.F.R. § 422.560 *et seq.* Under the traditional process, a Level 1 appeal requires enrollees to seek reconsideration from their MAO within 60 days of the organization

determination.  *See* 42 C.F.R. §§ 422.578–422.590.  If the MAO upholds the denial, the enrollee

may seek Level 2 review by an Independent Review Entity.  *See id.* §§ 422.592–422.596.  For

certain types of organization determinations—such as the termination of Medicare coverage for

post-acute care at issue in this case, CMS regulations give enrollees an option to initiate expedited

or "fast-track" Level 1 and 2 appeals directly to an External Review Entity, such as a Quality

Improvement Organization ("QIO").  *See*, *e.g., id.* § 422.626.

Regardless of the type of appeal the Medicare enrollee initiates, if she remains unsatisfied

after Level 2, she has a right to a Level 3 appeal—a hearing by an HHS Administrative Law Judge

("ALJ").  *See id.* §§ 422.600–422.602.  Finally, the enrollee may seek Level 4 review by the

Medicare Appeals Council.  *See id.* § 422.608.  A beneficiary may seek review in federal district

court only after the Medicare Appeals Council has issued a Level 4 final determination on behalf

of the Secretary of HHS.  42 U.S.C. § 405(g)-(h); *id.* §1395w-22(g)(5); 42 C.F.R. § 422.612.  And

that lawsuit can only be filed against the Secretary of HHS in the federal district court for the

district where the enrollee resides.  *See* 42 U.S.C. § 405(g).

## II.   PLAINTIFFS' CLAIMS FOR SKILLED NURSING AND INPATIENT REHABILITATION FACILITY BENEFITS

Plaintiffs seek to recover for post-acute care provided after Humana determined that these

services were not medically necessary under the Medicare Act.  As noted above, the named

Plaintiffs are Medicare beneficiaries who elected to receive Medicare Benefits through Humana.

Amend. Compl., R.37, PageID#: 208–09.  Ms. Barrows resided in Minnesota, Ms. Hagood in

North Carolina, Ms. Merkley in Kentucky, Ms. Kohl in Wisconsin, and Ms. Balani in Texas.  *Id.*

The Amended Complaint alleges that Ms. Barrows, Ms. Hagood, Ms. Kohl, and

Ms. Merkley were each admitted to a skilled nursing facility (SNF) following discharge from a

hospital.  *Id.* at 218, 220–21, 225.  According to the Amended Complaint, Humana covered 15 days

of SNF care for Ms. Barrows, *id.* at 218; 19 days for Ms. Hagood,[8] *id.* at 220–21; 18 days for

Ms. Kohl's first SNF stay and 31 days for her second (a total of 49 days covered),[9] *id.* at 226–28;

and (after a series of successful Level 1 appeals) 53 days for Ms. Merkley's first SNF stay, and

37 days for her second (a total of 90 days covered), *id.* at 221–25.  For each of these named

Plaintiffs, Humana issued a Notice of Medicare Non-Coverage after determining that SNF care

was no longer medically necessary.  *Id.* at 218, 220, 222–25, 227.[10]

Although each Plaintiff sought review of Humana's organization determination through

portions of the Medicare Act's administrative appeals process, no Plaintiff exhausted all four levels

of review.   Ms. Hagood completed Level 3 of the appeals process and received an adverse

determination from an ALJ, which upheld Humana's determination that SNF care was not

medically necessary.  Exhibit 1, Sealed Filing, R.30.  Ms. Barrows and Ms. Kohl completed Level

1, where an independent review entity upheld Humana's organization determinations.  Exhibit 2,

Sealed Filing, R.30; Exhibit 4; Amend. Compl., R.37, PageID#: 226–27.  And despite initiating

multiple separate successful Level 1 appeals challenging Humana's coverage determinations, the

Amended Complaint states that Ms. Merkley only appealed as far as Level 2, where two

independent review entities similarly agreed that Humana correctly determined that additional

SNF care was not medically necessary.  Amend. Compl., R.37, PageID#: at 223, 225; Exhibit 5.

---

[8] The Amended Complaint misstates the timeline for Ms. Hagood's SNF care.  *See* Amend. Compl., R.37, PageID#: 220.  According to the ALJ's decision, Ms. Hagood was admitted to the SNF on October 26, 2022.  *See* Exhibit 1, Sealed Filing, R.30, at 7.  Humana covered her care for 19 days. *See id.* at 7–8.  On November 11, 2022, Humana informed Ms. Hagood and her family that her care would no longer be covered after November 13, 2022.  *Id.* at 8–9.  Her family opted to keep her in the facility until November 28, 2022, when she was readmitted to an inpatient facility.  *See id.* at 18.

[9] Humana's claims records do not align with the Amended Complaint's allegations regarding Ms. Kohl's outstanding balance, but this distinction is immaterial to resolution of this motion.

[10] *See* Exhibit 6, which includes the Notices of Medicare Non-Coverage issued to each of the named Plaintiffs that correspond to their most recent adverse appeals.

As to Ms. Balani, the Amended Complaint alleges that Humana wrongly denied Ms. Balani's request for prior authorization of coverage for high-intensity care at an IRF. Amend. Compl., R.37, PageID#: 228. Ms. Balani's facts are different from the SNF cases above—in her case, Humana covered Ms. Balani's stay at an acute-care hospital but denied a request for prior authorization for Ms. Balani to be transferred to an IRF. *Id.* Ms. Balani received an adverse ALJ decision on her Level 3 appeal upholding Humana's IRF coverage determination that the high level of care provided at an IRF was not medically necessary. *See* Exhibit 3. Ms. Balani initiated, but has not completed, a Level 4 appeal to the Medicare Appeals Council. Amend. Compl., R.37, PageID#: 229. Therefore, as of the filing of the Amended Complaint, not a single named Plaintiff has finished all four levels of administrative review.

The Amended Complaint alleges eight causes of action for damages allegedly caused by Humana's denial of coverage for Plaintiffs' post-acute care and alleged improper investigation into Plaintiffs' claims for Medicare Benefits. But these causes of action, at bottom, ask this Court to apply state law to second-guess the process and outcome of Humana's Medicare coverage determinations made pursuant to federal law. Four of the claims arise from state common law. The first two are breach-of-contract claims that assume Plaintiffs entered into a contract with Humana for the provision of insurance under the Medicare Advantage program. *Id.* at 234, 236. Humana's first alleged breach was its use of "the nH Predict AI Model to resolve . . . claims without an adequate individualized investigation" and failure to provide a "thorough, fair, and objective investigation of each submitted claim prior to a claim denial." *Id.* at 235. Humana's second alleged breach was a violation of the implied covenant of good faith and fair dealing under the insurance agreement when it allegedly improperly delegated its claims-review function to the nH Predict AI Model and failed to require its agents to conduct a proper investigation of each submitted claim.

9

*See id.* at 236–37.  In their third cause of action, Plaintiffs allege that Humana unjustly enriched itself when it "knowingly received and retained wrongful benefits and funds from Plaintiffs" and "for a service that Humana failed to deliver"—ostensibly, individualized review of Plaintiffs' claims for benefits.  *Id.* at 238.  Plaintiffs' common law fraud cause of action is sparse, but asserts that Humana defrauded Plaintiffs by failing to inform them of its alleged use of the nH Predict tool before Plaintiffs enrolled or reenrolled in their Medicare Advantage plan.  *See id.* at 247.

The remaining state statutory causes of action are similarly rooted in Humana's denial of coverage for, and alleged improper investigation of, claims for Medicare Benefits.  Plaintiffs raise insurance bad faith claims under statutes from 21 different states, *id.* at 242–46, two North Carolina unfair claims settlement practices claims, *id.* at 239–42, and one Minnesota unfair and deceptive insurance practices claim, *id.* at 246.  Each of the Amended Complaint's state statutory claims are premised on the same fact pattern: Humana's allegedly improper denial of Medicare Benefits for Plaintiffs' post-acute care.  *See, e.g.*, *id.* at 242–43 ("The Bad Faith Claim States prohibit using bad faith or unreasonable means to make coverage determinations under an insurance policy . . . Defendant used and continues to use the nH Predict AI Model to make coverage determinations in bad faith that should be made by licensed physicians[.]").

## **STANDARD OF REVIEW**

The Court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) weeds out cases that do not warrant discovery because, based on the factual scenario on which the case rests, the plaintiff could never prevail. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  A court considering such a motion must disregard any conclusory allegations and judge the complaint on its well-pleaded factual allegations alone.  *Id.* at 678; *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488

(6th Cir. 2009).  If those factual allegations do not add up to a valid cause of action, the Court should grant the motion and dismiss the case.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561– 64 (2007).  Because 12(b)(6) motions test only the sufficiency of the complaint, courts generally disregard evidence that does not appear on the face of the pleading.  *Barrett*, 130 F.3d at 253.  Still, a court "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" without converting the motion into one for summary judgment.  *Ashland*, 648 F.3d at 467 (citation omitted).  It may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Motions to dismiss under Rule 12(b)(1) are a different story.  The point of a 12(b)(1) motion is not to test the sufficiency of the complaint, but to remove from a court's docket cases the court cannot decide because it "lack[s] [] subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  When ruling on a 12(b)(1) motion, courts are not confined to the allegations in the pleading.  Rather, "it is well established that in considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted."  *Humphrey*, 279 F. App'x at 331.  "The plaintiff bears the burden of establishing that jurisdiction exists."  *Taylor v. Keycorp*, 680 F.3d 609, 612 (6th Cir. 2012).  And if it cannot do so "by a preponderance of the evidence," the court must dismiss the complaint.  *Capitol Specialty Ins. Corp. v. IKO, Inc.,* 2013 WL 6196564, at *2 (W.D. Ky. Nov. 26, 2013).

**ARGUMENT**

I. **THE MEDICARE ACT DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS, WHICH ARE SUBJECT TO A MANDATORY FEDERAL ADMINISTRATIVE EXHAUSTION PROCESS.**

This case should be dismissed for lack of subject matter jurisdiction because Plaintiffs did not fully exhaust the Medicare Act's mandatory administrative review process.  When Congress passed the Medicare Act, it specified that all claims "arising under" Medicare must proceed through CMS's administrative review process and receive a final decision issued by the Secretary before they can be brought in federal court.  42 U.S.C. §§ 405(h), 1395w-22(g)(5); 42 C.F.R. § 422.566(b); *Harwood by Next Friend Adelson v. Aetna Health of Mich.*, 2023 WL 424715, at *1–2 (E.D. Mich. Jan. 26, 2023) ("The Medicare Act's grant of subject matter jurisdiction only permits judicial review of the final decision of the Secretary made after a hearing." (citing *Giesse*, 522 F.3d at 703–04 (cleaned up)).  This exhaustion requirement ensures national uniformity by allowing the federal government to set coverage criteria for Medicare Benefits and oversee how MAOs administer those Medicare Benefits.  Plaintiffs attempt to sidestep this mandatory administrative process and ask this Court to second guess coverage determinations on claims for Medicare Benefits by bringing state common law and statutory theories—all to conjure up subject matter jurisdiction when none exists.

Multiple federal courts have held that the four-step administrative appeal process discussed above is the *exclusive* process for challenging a MAO's coverage determinations, and also that exhaustion of that process is a *jurisdictional prerequisite* that must be satisfied before a federal district court can hear the Plaintiffs' claims.  *See*, *e.g., Tenet Healthsystem GB, Inc., v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 587 (11th Cir. 2017) (quoting *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)).  As the Ninth Circuit explained in 2022:

Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare. Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a "final decision" of the Secretary and channels judicial review through § 405(g), subject to the same jurisdictional limitations imposed by § 405(h). Congress imported these requirements into § 1395w-22(g) after the Supreme Court in *Ringer* had construed virtually identical language in § 1395ff(b)(1) to mandate administrative exhaustion as a prerequisite for obtaining judicial review of a claim for Medicare benefits.

*Glob. Rescue Jets*, 30 F.4th at 914. Thus, when plaintiffs—like the named Plaintiffs here—fail to complete the administrative exhaustion process set by Congress for contesting Medicare Benefits determinations, the Court lacks subject matter jurisdiction, and the complaint must be dismissed as a matter of law. *See, e.g.*, *id.* at 914, 919–20; *Uhm*, 620 F.3d 1138; *Williams v. Allegheny Cnty.*, 2023 WL 4238892, at *7 (W.D. Pa. June 28, 2023); *Moses v. United Healthcare Corp.*, 2020 WL 2037115 (D. Ariz. Apr. 28, 2020); *Dicrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926 (D. Haw. Sept. 16, 2015).

### A.   Plaintiffs' Claims Are Subject To The Medicare Act's Exhaustion Requirements Because They Are "Inextricably Intertwined" With The Denial Of Medicare Benefits.

Every cause of action in the Amended Complaint arises under the Medicare Act because they stem from Humana's review and denial or termination of coverage for Plaintiffs' Medicare Benefits. As discussed above, Medicare beneficiaries must receive a final decision from the Secretary of HHS before seeking judicial review of claims "arising under" the Medicare Act. *See* 42 U.S.C. § 405(h); *id.* § 1395ii; *Uhm*, 620 F.3d at 1141. A claim "arises under" the Medicare Act if the "standing and the substantive basis for the presentation of the claims" is the Medicare Act, or if it is "inextricably intertwined with a claim for Medicare benefits." *Uhm*, 620 F.3d at 1141 (*citing Ringer,* 466 U.S. at 614–15); *see also Giesse*, 522 F.3d at 702 (Medicare Act was the "standing and substantive basis for" claim for damages caused by the "arbitrary and capricious termination of [enrollee's] medical benefits"). Plaintiffs cannot circumvent the Medicare Act's

13

exhaustion requirements by rebranding their claims for Medicare Benefits under a different name. *See*, *e.g.*, *Ringer,* 466 U.S. at 614–16, 618, 621 ("supposed 'procedural' objections" and claims for "declaratory and injunctive relief" implicated "the payment of benefits" and "right to future payments"); *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1104 (11th Cir. 1998) (plaintiffs cannot "evad[e] administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations").

Further, a claim is "inextricably intertwined" with a claim for Medicare Benefits if it does not involve issues separate from a party's claim that it is entitled to benefits. *Uhm*, 620 F.3d at 1143 (breach of contract claim "premised on the fact that Humana 'failed to provide prescription drug benefits as promised'" and unjust enrichment claim alleging Humana "received monies as a result of payments made by [the plaintiffs] for prescription drug benefits that Humana failed to provide" arose under the Medicare Act because they were "at bottom, creatively disguised claims for benefits"); *Glob. Rescue Jets, LLC*, 30 F.4th at 919 (consumer-protection claim rested "directly on the interpretation of benefits provided under Kaiser's Medicare Advantage plans" because, on plaintiffs' theory, Kaiser's failure to pay benefits would violate its Medicare Act obligations).

For example, in *Harwood by Next Friend Adelson v. Aetna Health of Michigan*, a Medicare Part C beneficiary sued her MAO on breach of contract, specific performance, and breach of good faith and fair dealing claims after it denied pre-approval for her transfer to an IRF. 2023 WL 424715 at *2. The court held that the claims arose under the Medicare Act because they ultimately sought coverage for IRF services. *Id.* Similarly, in *Hepstall v. Humana Health Plan, Inc.*, the court dismissed tort and contract claims against Humana because they were not exhausted under the Medicare Act. 2018 WL 6588555 at *1 (S.D. Ala. Nov. 26, 2018). The plaintiff, the husband

of a MA beneficiary, alleged that Humana wrongfully denied coverage for treatments, leading to economic harm and the death of his wife.  The court concluded that the plaintiff sought "recovery for damages he suffered as a result of this refusal…[including] the costs he incurred for healthcare benefits that Humana refused to pay."  *Id.* at *8.  Although the claim was restyled as breach of contract and bad faith refusal to pay, the essence of the causes of action remained a "cleverly concealed claim for benefits under the Medicare Act."  *Id.*

Even claims challenging the *process* by which a Medicare coverage determination is made are inextricably intertwined with claims for Medicare Benefits.  Indeed, one court held that nearly identical claims to those brought here—which challenged an MAO's use of third-party claims-management software—were "'at bottom' a claim that [Medicare] Advantage enrollees [were] being denied coverage and/or benefits to which they were entitled under the Medicare Act." *Ex parte Blue Cross & Blue Shield of Ala.,* 90 So.3d 158, 163–64 (Ala. 2012).  *See also DiCrescenzo,* 2015 WL 5472926, *8 (claims about "delay or mishandling of the coordination of benefits" were inextricably intertwined with a Medicare Benefits decision); *Moses v. United Healthcare Corp.*, 2020 WL 2037115 at *3 (D. Ariz. 2020) (negligent training and supervision claims "concern[ing] [plaintiff's] interactions with [MAO] representatives relating to his efforts to manage and secure benefits" were inextricably intertwined with claims for Medicare benefits); *Zhang v. UnitedHealthCare*, 2021 WL 3270319, *2 (D. Ariz. July 30, 2021) (MAO's alleged delay in approving benefits cannot be "disentangle[d]" from Medicare benefits decision).

Here, despite Plaintiffs' creative attempts to disguise their claims for benefits as a novel legal theory, each cause of action arises under the Medicare Act because the Amended Complaint asks the Court to judge the validity of Humana's process for reviewing claims for Medicare Benefits and its eventual denial of coverage.  For example, Plaintiffs' breach of contract, breach

of implied covenant of good faith and fair dealing, and unjust enrichment causes of action allege Humana's processes for reviewing and investigating claims led to a denial of Medicare Benefits in breach of their insurance agreements.[11]    *See* Amend. Compl., R.37, PageID#: 234–39. Plaintiffs' sparse common law fraud allegations similarly concern this same dissatisfaction with Humana's coverage determinations, claiming that Humana failed to disclose that Plaintiffs' coverage determinations would be made by an allegedly flawed algorithm.[12] *Id.* at 247.  These causes of action ask the Court to second guess whether Humana's process for reviewing claims for Medicare Benefits was acceptable.  As noted above, regulations promulgated under the Medicare Act set the processes and criteria MAOs must use for making Medicare Benefits coverage determinations, CMS has published guidelines for MAO's use of AI and algorithms in making coverage determinations, and the coverage determinations about which Plaintiffs complain in this case were already scrutinized and upheld by an HHS Administrative Law Judge or a CMS-contracted external review organization.  *See supra* at 5–6.

Indeed, the allegations in this case are nearly identical to the alleged facts in *Ex parte Blue Cross and Blue Shield of Alabama*, where the Alabama Supreme Court instructed the lower court to dismiss a complaint that alleged that an MAO used a third-party claims management software to review and deny claims (and even "cut off coverage prematurely") for SNF benefits because the plaintiff's breach of contract, unjust enrichment, and other causes of action were "at bottom"

---

[11] These "breach of contract" claims fail for another reason too: MAOs do not issue "contracts" to Medicare enrollees.  Rather, Medicare Benefits are provided pursuant to federal law and regulations, and MAOs issue their beneficiaries an "Evidence of Coverage" document, which is largely written by CMS.  *See, e.g.*, 42 C.F.R. §§ 422.111, 422.2261.

[12] Plaintiffs' barebones "fraud by omission" claim must also be dismissed because it fails to meet the heightened pleading standard under Rule 9(b)(6), much less the Rule 8 pleading standard required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  For example, the Amended Complaint does not allege the source of Humana's purported duty to disclose this information.  *See* Amend. Compl., R.37, PageID#: 247–48.

claims that enrollees "[were] being denied coverage and/or benefits" that arose under the Medicare Act. 90 So.3d at 164. Just like in that case, the claims here "involve questions of coverage and compliance with the Medicare Act that, according to [the] [C]omplaint, have affected Medicare Advantage enrollees and could affect future enrollees." *Id.* at 167. Thus, "at bottom" each cause of action here arises under the Medicare Act.

The remaining statutory causes of action similarly arise under the Medicare Act. Although Plaintiffs avoid mentioning the type of remedy they seek for their state statutory claims, questions as to whether Humana's investigations into an enrollee's medical status were "reasonable," Amend. Compl. R. 37, PageID#: 240, "adequate," *id.* at 244, 246, or "fair," *id.* at 238, relate directly to whether Humana acted appropriately under Medicare's rules and regulations when it reviewed and denied Plaintiffs' Medicare Benefits. *See, e.g.,* 42 C.F.R. § 409.30–409.36 (CMS regulations for coverage of posthospital SNF care); *id.* § 422.137 (MAO's use of utilization management programs). Similarly, allegations that there was "no reasonable basis for denial of Plaintiffs' and Class members' claims" for benefits, *e.g.,* Amend. Compl., R.37, PageID#: 240, 245, are inextricably intertwined with the Medicare Act regulations governing SNF coverage, *see* 42 C.F.R. § 409.30–409.36 (coverage of posthospital SNF care); § 412.622(a)(3) (criteria dictating when IRF care is "reasonable and necessary"). Determining whether an MAO acted "without any reasonable or arguable reason" when denying enrollees' benefits, Amend. Compl., R.37, PageID#: 240, 243, is squarely the responsibility of each level of the Medicare Act's administrative review process, 42 C.F.R. § 422.566(b) (Medicare beneficiaries' right to appeal organization determinations through the Medicare Act's exclusive administrative appeals process). Because all of Plaintiffs' claims arise from the Medicare Act, they must be properly exhausted before a court can consider them.

**B.** **Plaintiffs Did Not Fully Appeal Humana's Coverage Determinations Through Medicare's Mandatory Federal Appeals Process.**

Even though all of their claims arise out of the Medicare Act, Plaintiffs do not allege that any Plaintiff completed the four levels of administrative appeals that the Medicare Act requires before a federal district court can hear their claims. As a result, Plaintiffs' Amended Complaint must be dismissed for lack of subject matter jurisdiction.

As noted above, the MA appeal process is governed by federal statutes and regulations that require enrollees to complete four levels of administrative review *prior* to filing suit on any claim arising under the Medicare Act. *See* 42 U.S.C. §§ 405(g), 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*; *Uhm*, 620 F.3d at 1144 (federal courts could not assert jurisdiction when plaintiffs failed to allege that they appealed through the §405(g) process); *Harwood*, 2023 WL 424715 at *1 (dismissed because plaintiff conceded she had not exhausted administrative remedies); *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222, 1234 (D.N.M. 2018) (no subject matter jurisdiction because plaintiffs conceded MA enrollee did not appeal a denial of a liver transplant evaluation); *Alston v. UnitedHealth Servs., Inc.*, 291 F. Supp. 3d 1170, 1173, 1175-76 (D. Mont. 2018) (no jurisdiction when enrollee made no contention that he complied with the exhaustion requirements). Plaintiff suing under the Medicare Act must plead that they have completed all four levels of administrative review as outlined *supra* at 6–7.

Here, the Plaintiffs have the burden of establishing subject matter jurisdiction exists. *Taylor*, 680 F.3d at 612. Yet the Amended Complaint does not allege that any Plaintiff completed all four levels of the administrative review process or received the required final decision by the Secretary of HHS. *See* Amend. Compl. R.37, 218, 219–21, 223, 225–27, 228–29. As a result, the Plaintiffs have not shown that this Court has jurisdiction, and their case must be dismissed.

Moreover, the relevant administrative records reflect that *none* of the Plaintiffs completed the administrative review process.  Two plaintiffs, Ms. Hagood and Ms. Balani, made it as far as Level 3: On March 17, 2023, an ALJ issued a decision on Ms. Hagood's Level 3 appeal, upholding Humana's coverage determination because the requested level of care was not medically necessary under CMS guidelines.  Exhibit 1, Sealed Filing, R.30, at 14.  Similarly, on February 29, 2024, an ALJ issued a decision on Ms. Balani's Level 3 Appeal, finding that Humana correctly determined that Ms. Balani did not need the type of intense services offered at an IRF.  Exhibit 3 at 5.  Although Ms. Balani appealed this adverse determination to the Medicare Appeals Council, Amend. Compl., R.37, PageID#: 229, the four-step appeals process is not complete because a final decision has not been issued.  42 U.S.C. §§ 405(g)-(h), 1395w-22(g)(5); 42 C.F.R. §422.612.

Nor did the rest of the Plaintiffs complete the administrative appeals process.  Ms. Barrows and Ms. Kohl did not appeal Humana's coverage determination past Level 1.  Amend. Compl., R.37, PageID#: 226–27; Exhibit 2, Sealed Filing, R.30.  And despite Ms. Merkley's multiple successful appeals, she did not request a Level 3 appeal of the adverse decisions on her Level 2 appeals.  Amend. Compl. R.37, PageID#: 223, 225.  Thus, the Court lacks subject matter jurisdiction over Plaintiffs' claims.  *Alston*, 291 F. Supp. 3d at 1175–76.  The Medicare Act is clear: the administrative appeal process is the proper forum for these complaints to be heard. *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*  Plaintiffs cannot avoid that process and forum-shop for relief in this Court by restyling their appeals.

### C.    Even If Plaintiffs Had Exhausted The Mandatory Appeals Process, The Secretary Of Health And Human Services—Not Humana—Would Be The Proper Defendant.

This case should be dismissed because, even if Plaintiffs had fully exhausted the exclusive administrative appeal process set by Congress, the Plaintiffs sued the wrong defendant.  When Congress passed the Medicare Act, it specified beneficiaries could seek review of final

determinations only from the Secretary of HHS—not their MAO. *See* 42 U.S.C. § 405(g); 42 C.F.R. § 422.612(c); *id.* § 405.1136(d)(1); *see also Ebert*, 2022 WL 509117, at *2 ("Even though the insurer . . . is the opposing party during the administrative review proceedings at the agency level, once a dispute like this goes to court, the Secretary of HHS is the party responsible for defending the agency's decision below.") (collecting cases); *Madsen v. Kaiser Found. Health Plan, Inc.*, 2009 WL 1537878, at *4 (S.D. Cal. June 2, 2009) ("In any civil action seeking judicial review of a decision of the Medicare Appeals Council, the Secretary of HHS, in his or her official capacity, is the proper defendant."). Even putting aside Plaintiffs' failure to exhaust, the only proper defendant for this lawsuit would be HHS Secretary Becerra, not Humana. Therefore, the Amended Complaint must be dismissed.

## II. THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST HUMANA BECAUSE THEY ARE EXPRESSLY PREEMPTED BY THE MEDICARE ACT.

The Court must dismiss Plaintiffs' claims because they are preempted by the federal Medicare Act and regulations that govern when MAOs must cover post-acute care and how MAOs must make coverage determinations.

### A. The Medicare Act Imposes A Sweeping Preemption Provision.

To preserve the federal government's ability to uniformly administer federal benefits and to avoid inconsistent application of the Medicare Program across the states, Congress expressly preempted any application of state statutes and causes of action that relate to Medicare coverage, rules, and regulations when it passed the Medicare Modernization Act in 2003. As the Ninth Circuit explained in *Uhm*:

> Prior to the 2003 amendments, the preemption clause provided that federal standards would supersede state law and regulations "with respect to" MA plans only "to the extent such law or regulation is inconsistent with such standards" and specified several "standards specifically superseded." 42 U.S.C. § 1395w-26(b)(3)(A)(2000). The 2003 amendments struck both that qualifying clause and the enumerated standards from the provision. *See* 42 U.S.C. § 1395w-

> 26(b)(3)(A)(2003).  The Conference Report accompanying the Act explains that, in striking the clause, Congress intended to broaden the preemptive effects of the Medicare Statutory regime[.]

*Uhm*, 620 F.3d at 1149 (citing H.R. Rep. No. 108-391, at 557 (2003) (Conf. Rep.) ("[T]he MA program is a federal program operated under [f]ederal rules.  State laws, do not, and should not apply[.]")).  After the 2003 amendments, Medicare Part C's preemption provision now provides:

> The standards established under this part shall supersede *any State law or regulation* (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (emphasis added); *see also* 42 C.F.R. § 422.402.  Multiple circuits have explained that the Medicare Act's amended preemption provision is "akin to field preemption."  *See Mulready*, 78 F.4th at 1200, 1205 (describing Part D's preemption provision—which is identical to Part C's—as so "unmistakably broad" and "expansive" that field preemption applies); *Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Hernández*, 58 F.4th 5, 12 (1st Cir. 2023) (the 2003 amendment expanded the scope of preemption "beyond those laws that directly conflict with federal standards"); *Uhm*, 620 F.3d at 1150 (same).

Given the expansive language of the preemption provision, neither a conflicting state law standard nor "specific federal-state overlap" is necessary for a state law to be preempted.  *See Mulready*, 78 F.4th at 1208 (holding that an Oklahoma state statute, which purported to require pharmacy benefit managers to allow all Oklahoma pharmacies willing to accept the PBM's preferred-network terms, was preempted by the Medicare Act because the law "function[ed] as a regulation of a Part D plan itself." (cleaned up)).  Instead, any state law-related cause of action and common law cause of action that relates to a Medicare standard is preempted.  *See* 40 Fed. Reg. at 4665 ("all State standards, *including those established through case law*, are preempted to the extent they specifically would regulate MA plans") (emphasis added)); *Rudek v. Presence Our Lady of Resurrection Med. Ctr.*, 2014 WL 5441845, at *4 (N. D. Ill. Oct. 27, 2014) (observing that

it would be "odd" for Congress to preempt state statutes and regulations yet remain "unconcerned about the greater risks of inconsistency and variability posed by the application of state law").

When applying this broad field-preemption provision, courts have concluded that, at a minimum, the Medicare Act preempts any state law or cause of action where "the conduct underlying the plaintiffs' allegations and state law claims [is] governed by federal regulatory standards." *Hepstall,* 2018 WL 6588555, at *6; *Uhm,* 620 F.3d at 1149–50 (common law fraud and state consumer protection claims were preempted when, "at bottom," they complained about marketing activities regulated under Medicare because a court's ruling on them had the potential to "directly undermine CMS's prior determination" and its "ability to create standards" regulating Medicare entities); *Hernández,* 58 F.4th at 12–14 (Puerto Rico statute that required MAOs to pay healthcare providers a minimum rate preempted due to conflict with federal Medicare standards); *Mulready*, 78 F.4th at 1208–09; *Williams*, 2023 WL 4238892, at *7 (breach of contract and breach of good faith and fair dealing claim against MAO preempted by Medicare Act); *Alston*, 291 F. Supp. 3d at 1173 (state-law claims alleging negligence, respondeat superior, intentional infliction of emotional distress, and breach of contract against MAO were preempted); *Potts v. Rawlings Co.,* 897 F. Supp. 2d 185, 199 (S.D.N.Y. 2012) (state anti-subrogation laws preempted by Medicare Act); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1090 (N.D. Cal. 2011) (state-law unfair competition and consumer protection claims preempted by the Medicare Act); *Quishenberry v. UnitedHealthcare, Inc.*, 532 P.3d 239, 249 (Cal. 2023) (negligence claims based on MAO's alleged state law duty to ensure enrollee received skilled nursing benefits preempted because the MAO's duty turned on a determination of whether the enrollee qualified for SNF care and were therefore duplicative of MA standards); *Morrison v. Health Plan of Nev.,*

22

*Inc.*, 130 Nev. 517, 523 (Nev. 2014) (state-law negligence claim against MAO concerning selection and supervision of participating providers was preempted by the Medicare Act).

For instance, in *Hepstall v. Humana Health Plan, Inc.*, the court explained that it could not hear claims that sought to retroactively second-guess Medicare coverage determinations. 2018 WL 6588555, at *6–7. In that case, an enrollee's husband sued Humana to recover "the value of his premiums paid in exchange for insurance that was not as represented, for the costs of healthcare which Defendant refused to pay, and for mental anguish or emotional suffering" as well as punitive damages for his wife's wrongful death. *Id.* at *4. The court explained that each of those claims was preempted because they all were "based on or ar[o]se from Defendant's refusal or failure to pay for certain medical services," an area substantially regulated by the Medicare Act, CMS regulations, and coverage guidelines. *Id.* at *7. Like the preempted claims in *Hepstall*, Plaintiffs' claims here relate to, and conflict with, existing Medicare standards, so the Medicare Act's preemption provision requires that this Court dismiss them.

### B.    The Medicare Act Preempts Plaintiffs' Claims Because, "At Bottom," They Are About Coverage Determinations Addressed By Medicare's Vast Regulatory Scheme.

The Medicare Act preempts Plaintiffs' causes of action because each is, at bottom, about a coverage determination concerning Medicare Benefits—the allegation that Humana improperly reviewed Plaintiffs' claims for benefits, *see, e.g.*, Amend. Compl., R.37, PageID#: 235–37, 244, 246–47, leading to a denial of coverage for their post-acute care, *id.* at 239, 241, 244, 247. Whether a Medicare Benefit should be covered by an MAO is the subject of federal standards, which compel MAOs to provide enrollees with "all services that are covered by Part A and Part B of Medicare," and to comply with "CMS's national coverage determinations" and its "general coverage guidelines." *Hepstall*, 2018 WL 6588555 at *7 (citing 42 C.F.R. §§ 422.101(a)–(b)). Thus, claims that Humana wrongly denied Medicare Benefits for post-acute care are preempted by the extensive

23

Medicare regulatory scheme that governs all aspects of an MAO's authorization for post-acute care. *See*, *e.g.*, 42 C.F.R. § 409.30 (basic pre-admission and admission requirements); § 409.31 (level-of-care requirement); § 409.32 (criteria and need for skilled nursing services); § 409.33 (examples of what qualifies as skilled nursing services); § 424.20 (plan of treatment and certification requirements for post-hospital SNF care). Plaintiffs' claims that Humana improperly investigated whether coverage should have been required run headlong into CMS regulations that explain how MAOs can make coverage determinations using utilization management policies and procedures. *See* 42 C.F.R. § 422.112(a)(6)(ii); § 422.137.

Allegations that Humana wrongly delegated its responsibility to make coverage decisions are similarly "governed by standards set forth in regulations promulgated by CMS." *Hepstall*, 2018 WL 6588555, at *7; s*ee* 42 C.F.R. § 422.566(d) (requiring adverse coverage determinations to be reviewed by an "appropriate health care professional"); *Alston,* 291 F. Supp. 3d at 1174–75 (plaintiff's negligence cause of action, which alleged that an insurer breached its "duty to conduct a reasonable investigation based on all available information and affirm or deny coverage within a reasonable time" was preempted because a state-law based decision turning on reasonableness would be inconsistent with Medicare Part D standards). And allegations that Humana "made material omissions of fact . . . prior to Plaintiffs and the Class purchasing and renewing their insurance policies," Amend. Compl. R.37 PageID#: 247, infringe on the field already governed by CMS rules that dictate what information is "vital to the beneficiary," 42 C.F.R. § 422.2267, by asking this Court to impose a duty on MAOs to disclose information beyond what the Medicare Act and CMS already require. *See id.* § 422.111 (disclosure requirements for MAOs).

This Court cannot apply state causes of action to determine whether Humana properly evaluated the Plaintiffs' need for post-acute care without second-guessing Humana's

administration of federal Medicare standards.  For example, in *Snyder v. Prompt Medical Transportation, Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019), a state-law wrongful death claim against an MAO was held preempted.  There, as here, the plaintiff alleged that the MAO wrongfully denied Medicare Benefits (an air ambulance transport to another hospital).  The trial court dismissed the MAO from the case, finding the claims preempted.  Affirming that decision, *Snyder* emphasized that federal regulations already govern the authorization of air ambulance transportation.  *Id.* at 653.  As the court further explained:

> [T]o resolve this argument, a court would have to apply a state law standard of care to a coverage determination governed by federal law.  Indeed, if allowed to stand, the Estate's complaint could theoretically allow [the MAO] to be found negligent even if it fully complied with all federal laws and regulations.  Under these circumstances, we can only conclude that the Estate's claims, which sound in state law that must be applied with respect to Medicare Part C, are preempted pursuant to Part C's express preemption provision.

*Id*.  Here, Plaintiffs should not be allowed to forum-shop their way to a different coverage determination by "creatively" cloaking their complaint about denial of Medicare Benefits under the guise of causes of action arising under state statutes or common law.  *Uhm*, 620 F.3d at 1143; *Blue Cross & Blue Shield of Ala.*, 156 F.3d at 1104.  These claims should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: June 6, 2024                 Respectfully Submitted,

                                    */s/ Michael P. Abate*

25

Michael P. Abate
Burt Anthony Stinson
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
E-mail: mabate@kaplanjohnsonlaw.com
E-mail: cstinson@kaplanjohnsonlaw.com

Kevin D. Feder (*pro hac vice*)
Jason Yan (*pro hac vice*)
Gillian Mak (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:  202-383-5164
E-mail: kfeder@omm.com
E-mail: jyan@omm.com
E-mail: gmak@omm.com

*Attorneys for Defendant Humana Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 6, 2024, a copy of the foregoing was electronically filed with the Court of Clerk using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Michael P. Abate*
*Counsel for Defendant*