UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JOANNE BARROWS, SUSAN HAGOOD, SHARON MERKLEY, LORRAINE KOHL, and DOLLY BALANI, individually and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>HUMANA, INC.,<br><br>    Defendant. | Case No. 3:23-cv-00654-RGJ |

**PLAINTIFFS' SUPPLEMENTAL BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Below, Plaintiffs briefly address several points raised at the April 16, 2025 hearing.

I. **PLAINTIFFS NEED NOT EXHAUST ADMINISTRATIVE REMEDIES**

The exhaustion requirement only applies to claims "arising under" the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984) (holding that the 405(h) jurisdictional bar applies only to claims "arising under" the Medicare Act). If a claim doesn't "arise under" the Medicare Act, exhaustion is a non-issue. If a claim *does* arise under the Medicare Act, there is a jurisdictional "presentment" requirement and a non-jurisdictional, waivable exhaustion requirement. As explained below, Plaintiffs' claims do not "arise under" the Medicare Act, but even if they did, Plaintiffs satisfied the presentment requirement, and the Court should waive the exhaustion requirement.

A. **PLAINTIFFS' CLAIMS DO NOT "ARISE UNDER" THE MEDICARE ACT**

A claim "arises under" the Medicare Act when (1) the "standing and substantive basis for the presentation of the claims" is the Medicare Act; or (2) it is "inextricably intertwined" with a Medicare benefits determination. Opp. at 7. A claim is "inextricably intertwined" with a benefits determination when it is, "at bottom," a claim for benefits. *Ringer*, 466 U.S. at 714.

Humana argues only that Plaintiffs' claims are "inextricably intertwined" with a benefits determination. MTD at 13–17. In doing so, Humana relies upon distinguishable case law.

In *Heckler v. Ringer*, the Court found claims arose under the Medicare Act where the plaintiffs sought declaratory judgment that certain kinds of claims were covered because if the plaintiffs succeeded, "only essentially ministerial details will remain," before benefits were obtained. 466 U.S. 602, 615 (1984). The Court found that this was "at bottom" a claim for benefits because it would necessarily lead to benefits being paid. *Id.*

At the hearing, Humana relied on *Giesse v. Sec'y of HHS*, 522 F.3d 697 (6th Cir. 2008). In *Giesse*, the court found the plaintiff's claims arose under the Medicare Act because he suffered harm resulting from "termination of medical benefits" and sought "damages stemming from an alleged wrongful termination of care," consistent with *Ringer*. *Id.* at 702, 707. As demonstrated in Plaintiffs' Opposition, Humana's other cases similarly only support the proposition that claims

1

arise under the Medicare Act when they seek remedies stemming from denial of *benefits*. Opp. at 8–9.

This is simply not what Plaintiffs seek here. Unlike *Ringer*, Plaintiffs' claims, if successful, will not necessarily result in benefits being obtained. The injunctive relief Plaintiffs seek would only ensure that claims are reviewed by medical professionals rather than AI; there is no guarantee that those re-reviewed claims will lead to benefits being paid. Unlike *Giesse*, Plaintiffs do not seek benefits or monetary damages stemming from denial of benefits. FAC ¶ 2. In fact, Plaintiffs' contract claims are brought on behalf of a class of *all* purchasers of Humana's Medicare Advantage product, *regardless* of whether those purchasers submitted claims for benefits. Thus, their claims cannot be, "at bottom," claims for benefits. As a result, under the test prescribed by *Ringer*, Plaintiffs' claims do not "arise under" the Medicare Act. *See Coker v. Kindred Healthcare Operating, Inc.*, 2015 U.S. Dist. LEXIS 186175, at *8–9 (N.D. Ga. Feb. 27, 2015) (damages claim resulting from provider's negligence was not "inextricably intertwined" with a claim for benefits because it did not seek benefits); *Ardary v. Aetna Health Plans*, 98 F.3d 496, 500 (9th Cir. 1996) (same).

B.  **PLAINTIFFS SATISFIED THE PRESENTMENT REQUIREMENT**

The presentment requirement is meant to ensure the claim-deciding entity has "an opportunity to rule on a concrete claim for reimbursement . . . before being haled into federal court." *See Ricu LLC v. United States HHS*, 2021 U.S. Dist. LEXIS 157717, at *11 (D.C. Aug. 20, 2021) (cleaned up). The requirement is satisfied by presenting an application for benefits; or, in the case of someone who had present benefits terminated, notifying the agency that the claimant still asserts entitlement to benefits, such as by filing an appeal. Dkt. 43 at 10. The presentment requirement is the only true jurisdictional inquiry of the exhaustion analysis. Opp. at 6–7.

Humana argues that Plaintiffs were required to present their claims to the Secretary, rather than Humana, their MAO insurer. Dkt. 68 at 2. Humana cites no authority where a Medicare Advantage enrollee's presentment of claims to her MAO, rather than the Secretary, was grounds for failing to meet the presentment requirement. The only authority Humana cites is easily

distinguishable. *See S. Rehab. Grp., P.L.L.C., v. Sec'y of Health and Human Servs.*, 732 F.3d 670 (6th Cir. 2013) (a traditional Medicare case where the Secretary *was* the insurer); *New Vision Home Health Care, Inc. v. Anthem, Inc.*, 752 Fed. App'x 228 (6th Cir. 2018) (finding claims were not presented where the plaintiff never filed a claim or appeal of the claims before the court). Humana's argument was squarely rejected in *Global Rescue Jets LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 915 (9th Cir. 2022), where the Ninth Circuit held that the plaintiff had satisfied the presentment requirement by filing a claim with the MAO in the first instance. Similarly, the *Lokken* court held that the plaintiffs had presented their claims when they had submitted claims for benefits to their MAO in nearly identical circumstances. *Estate of Lokken v. UnitedHealth Group, Inc.*, 2025 U.S. Dist. LEXIS 27262, at *10 (D. Minn. Feb. 13, 2025). Courts routinely hold that MAOs are agents of the Secretary for various purposes—the Court should apply that reasoning here. *See Global Rescue Jets*, 30 F.4th at 917 (MAO "qualifies as an 'officer or employee' of the . . . Secretary, as those terms are used in the third sentence of § 405(h)"); *Midland Psychiatric Assocs. v. United States*, 145 F.3d 1000 (8th Cir. 1998) (MAOs "do the work of the Government on the Secretary's behalf."). Thus, Plaintiffs have satisfied the presentment requirement by submitting their insurance claims to Humana, or by appealing denied claims.

      C.      **WAIVER OF THE EXHAUSTION PRONG IS WARRANTED**

Waiver of the exhaustion prong is appropriate when: (1) the claim is entirely collateral to a claim for benefits; (2) irreparable harm would result from exhaustion; and/or (3) exhaustion would be futile. *Bowen v. City of New York*, 476 U.S. 467, 484 (1986).

Here, Plaintiffs' claims are wholly collateral to a claim for benefits because the harm they suffered stems from Humana's breach of contractual and other duties by using AI rather than doctors to make determinations, rather than denial of benefits, and Plaintiffs do not seek benefits as damages. Opp. at 12.

Plaintiffs would suffer irreparable harm if required to exhaust because Humana's practices induce consumers to purchase plans that utilize AI to make claims determinations and otherwise breach Humana's duties. Opp. at 12–14. For consumers who are unable to pay for care in the event

of denied coverage, Humana's practices risk serious bodily injury or death. *Id; see also Lokken*, 2025 U.S. Dist. LEXIS 27262, at *11 (finding irreparable harm in identical circumstances).

Further, exhaustion is futile because (1) in the event of a successful appeal by an insured, Humana, through its agents, immediately issues a renewed denial, FAC ¶ 43; (2) for the limited number of appeals that reach the later stages of the appeals process, Humana typically defaults on the appeal or pays the claim, terminating the appeals process before insureds can exhaust, FAC ¶¶ 46–47; and (3) the Medicare appeal reviewers lack the authority to grant the relief Plaintiffs seek, FAC ¶ 42. Opp. at 14–17; *see also Lokken*, 2025 U.S. Dist. LEXIS 27262, at *12 (finding exhaustion futile in identical circumstances).

During the hearing, Humana argued for the first time that *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000) and *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 (2000) narrowed *Bowen*'s judicial waiver of exhaustion to "only circumstances where requiring the enrollee to go through the appeal process would amount to 'no review at all.'" Dkt. 71 at 39:14–24. In doing so, Humana conflates the *Michigan Academy* exception to exhaustion with the *Bowen* judicial waiver of exhaustion. The *Michigan Academy* exception is a doctrine which, after *Illinois Council*, allows plaintiffs to proceed in court without exhausting when requiring exhaustion "would not lead to a channeling of review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17. The *Bowen* judicial waiver at issue here is a separate doctrine that is not truly an exception to exhaustion, but a waiver of the procedural requirements such that the Secretary's decision is considered "final" under § 405(g). *Cathedral Rock*, 223 F.3d at 362 (explaining that *Illinois Council* clarified that waiver under *Bowen* "did not create an exception" to § 405(g), "but rather required the Secretary to excuse some of its procedural requirements so its decision would be considered a 'final decision'" allowing for judicial review. The *Bowen* judicial waiver doctrine is not modified or limited by *Illinois Council* or the other cases Humana cites.

Humana further argued that *Manakee Professional Medical Transfer Serv. v. Shalala*, 71 F.3d 574 (6th Cir. 1995) prevents judicial waiver in this case. But in *Manakee*, the Sixth Circuit

4

found that the plaintiff sought an award of benefits, distinguishing *Bowen* and holding the plaintiff's claims were not "wholly collateral." Not so here. Unlike *Manakee*, here Plaintiffs do not seek benefits. Plaintiffs' claims are wholly collateral to claims for benefits, as explained above. Thus, *Bowen*'s reasoning for waiving the exhaustion requirement applies.

## II.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

The Medicare Act "does not preempt *all* state laws as applied to Medicare . . . rather, it preempts only those that occupy the same 'place'—that is, that regulate the same subject matter as—federal Medicare . . . standards." *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 971 (8th Cir. 2021).

Plaintiffs' contract claims are not preempted because they arise solely out of Humana's Evidence of Coverage contracts that impose obligations wholly separate from Medicare guidelines. To analyze these claims, the Court would only need to determine whether Humana complied with its own contract, not any Medicare guidelines or other CMS regulations. Thus, these claims do not regulate the same "subject matter" as the Medicare Act and are not preempted. *Lokken*, 2025 U.S. Dist. LEXIS 272262, at *19.

Humana's argument that Plaintiffs' common law fraud and unfair business practices claims are preempted relies chiefly upon *Do Sung Uhm v. Humana*, 620 F.3d 1134 (9th Cir. 2010). In *Uhm*, the Ninth Circuit held common law fraud and consumer protection claims were preempted because they were premised upon marketing materials that were vetted and approved by CMS, and adjudicating the plaintiff's claims would risk undermining CMS's determination that the materials were not misleading. *Id.* at 1150, 1157. Here, Plaintiffs' claims are based on Humana's use of the secret, undisclosed nH Predict algorithm to make claims determinations. FAC ¶¶ 1, 214. Because Humana's use of nH Predict was undisclosed, neither Plaintiffs nor CMS knew about Humana's conduct. Thus, an inquiry by a court into whether Humana's marketing materials and other plan documents accurately represented the terms of the plan could not conflict with a CMS determination, because the CMS determination was not based on the actual terms of the plan. Plaintiffs' common law fraud and unfair business practices claims are not preempted.

5

Dated: April 28, 2025                                            Respectfully Submitted

*/s/ Glenn A. Danas*
Glenn A. Danas
Ryan J. Clarkson
Zarrina Ozari
Michael A. Boelter
**Clarkson Law Firm, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
rclarkson@clarksonlawfirm.com
gdanas@clarksonlawfirm.com
zozari@clarksonlawfirm.com
mboelter@clarksonlawfirm.com

Gary M. Klinger
**Milberg Coleman Phillips Grossman PLLC**
227 W. Monroe Street, Suite 2100
Chicago IL  60606
Tel: (866) 252-0878
gklinger@milberg.com

John C Whitfield
**Whitfield Crosby & Flynn PLLC**
19 North Main Street
Madisonville, KY 42431
Tel: (270) 821-0656
JWhitfield@wcfjustice.com

James Guilfoyle
**Guilfoyle Law Office**
229 West Spring Street
New Albany, IN 47150
Tel: (812) 208-9704
jfg@inkylegal.com

*Attorneys for Plaintiffs*

6


**CERTIFICATE OF SERVICE**

I hereby certify that, on April 28, 2025, the foregoing was electronically filed with Court of Clerk using the CM/ECF system, which will automatically serve all parties through their counsel of record in accordance with Fed. R. Civ. P. 5(b)(2)(E).

                                            */s/ Glenn A. Danas*
                                            Glenn A. Danas