UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE ESTATE OF JOANNE BARROWS,                                    Plaintiffs
SUSAN HAGOOD, SHARON MERKLEY,
LORRAINE KOHL, AND KILLY ALANI,
Individually and on Behalf of All Others
Similarly Situated,

v.                                            Civil Action No. 3:23-cv-654-RGJ

HUMANA, INC.                                                     Defendant

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendant Humana, Inc. ("Humana") moves to dismiss Plaintiffs,' The Estate of Joanne

Barrows, Susan Hagood, Sharon Merkley, Lorraine Kohl, Dolly Balani, and class members'

("Plaintiffs"), Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and

for failure to state a claim on which relief can be granted under Rule 12(b)(6). [DE 40 at 260].

This motion is fully briefed, and this matter is ripe. [DE 43; DE 49]. For the reasons below,

Humana's Motion to Dismiss [DE 40] is **GRANTED in part and DENIED in part**.

### A.    BACKGROUND

At all relevant times, Plaintiffs were insured under Humana's Medicare Advantage Plan

(the "Plan"). [DE 37 at 209]. A Medicare Advantage Plan is a health insurance plan offered by

private companies that contract with Medicare. [*Id*. at 210]. When Plaintiffs enrolled for health

insurance coverage with Humana, they were provided with the explanation of coverage ("EOC"),

a written terms explaining the Plan coverage. [*Id*.]. Pursuant to these terms, "Humana is obligated

to provide benefits for covered health services and must pay all reasonable and medically necessary

expenses incurred by a covered member." [*Id*.].

1

From December 12, 2019, to present, all Plaintiffs received "post-acute care." [*Id*.]. Post-acute care is medically necessary care for patients recovering from serious illness or injuries and is covered by the terms of the Plan. [*Id*.]. Often, post-acute care is care furnished after an inpatient hospital stay. [*Id*.]. For these types of plans, Medicare providers use a "prospective payment system." [*Id*. at 211]. Prospective payment systems make coverage determinations before or during a patient's post-acute care. [*Id*.]. However, when an insurance company ends coverage before the doctor's discharge date, patients may have to choose between forgoing necessary care or paying out-of-pocket. [*Id*.].

Humana uses the nH Predict Artificial Intelligence ("AI") Model ("nH Predict") to make the above-described coverage decisions. [*Id*.]. It is Plaintiffs' position that "Humana . . . [uses] the nH Predict AI Model to supplant real doctors' recommendations and patients' medical needs" by directing Humana's medical review employees to "prematurely stop covering care without considering the individual patient[s'] needs." [*Id*.]. nH Predict compares a patient's diagnoses, age, living situation, and physical function to similarly situated patients to make coverage determinations. [*Id*. at 212]. Plaintiffs assert that "Humana wrongfully delegates its obligation to evaluate and investigate claims to [nH Predict]" and nH Predict "spits out generic recommendations based on incomplete and inadequate medical records and fails to adjust for a patient's individual circumstances and conflicts with the basic rules on what Medicare Advantage plans must cover." [*Id*. at 214]. Plaintiffs also allege that Humana employees cannot deviate from the nH predict decision, and those who do deviate are disciplined and terminated. [*Id*.].

Denial of benefits by Humana are appealable to Quality Improvement Organizations ("QIOs"), which are independent third-party organizations established to review claim determinations under the Medicare Act. [*Id*. at 215]. QIOs can overturn denials and reinstate

2

benefits with evidence. [*Id*.]. Plaintiffs allege that "over 90 percent of patient claim denials are reversed through either an internal appeal process or through federal administrative Law Judge [ ] proceedings." [*Id*.].

When asked to provide its nH Predict reports to patients, Humana employees deny their requests. [*Id*. at 214.]. Therefore, there is "no way for any individual patient to understand the actual basis for Humana's refusal to pay and there is no way for any individual patient to challenge the systemic process that leads to that refusal [by nH Predict]." [*Id*. at 215]. Even if Plaintiffs succeed on their QIO appeal, "Humana and its contractor, naviHealth, request updated medical records, issue another denial, and force patients to restart the appeals process." [*Id*. at 215-16]. And if patients appeal to an administrative law judge ("ALJ"), after the QIOs process, Humana agrees to pay the claims, therefore bypassing any scrutinization of the nH Predict AI Model. [*Id*. at 217]. Plaintiffs argue that Humana pays the claims to ensure that no claims are reviewed by the Medicare Appeals Council, "and thus nobody exhausts their administrative remedies." [*Id*.]. More, Plintiffs contend that had they known that Humana would "evade the legally required process for reviewing patient claims and instead delegate that process to its nH Predict AI Model to review and deny claims, they would not have enrolled with Humana" or paid the same for their plan. [*Id*.].

Plaintiffs brought eight counts in the amended complaint: Breach of Contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), Unjust Enrichment (Count III), Violation of North Carolina's Unfair Claims Settlement Practice (Count IV), Violation of North Carolina's Unfair Method of Competition (Count V), Insurance Bad Faith (Count VI), Unfair and Deceptive Insurance Practices (Count VII), and Common Law Fraud (Count VIII). [*Id*. at 234-48]. Accordingly, Plaintiffs seek actual damages, consequential damages, statutory

damages, nominal damages, exemplary/punitive damages, costs, attorneys' fees, damages for emotional distress, disgorgement and/or restitution, pre-judgment interest to the extent permitted by law, and declaratory and injunctive relief enjoining Humana from continuing its improper and unlawful claim handling practices. [*Id*. at 248].

Humana now moves to dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failing to state a claim on which relief can be granted. [DE 40 at 260].[1] Humana argues that Plaintiffs lack subject matter jurisdiction because Plaintiffs failed to exhaust the mandatory federal administrative process, that it is not the correct defendant, and because Plaintiffs' claims are expressly preempted by the Medicare Act. [*Id*. at 2-4]. In turn, Plaintiffs assert that (1) their claims are not subject to the administrative exhaustion requirement, but even if they were, this Court should judicially waive exhaustion, and (2) Plaintiffs' state law claims are not preempted by federal law. [DE 43]. Plaintiffs requested a hearing on this motion. [DE 50].

On April 16, 2025, this Court held a hearing on the issue of preemption. [DE 69 at 651]. After the hearing, both parties filed memoranda in support of their position. [DE 73; DE 74]. And both parties subsequently filed a response. [DE 76; DE 77]. During the hearing, Plaintiffs conceded that Violation of North Carolina's Unfair Claims Settlement Practice (Count IV), Insurance Bad Faith (Count VI), and Unfair and Deceptive Insurance Practices (Count VII) are preempted. [DE 71 at 679; *see also*, DE 73 at 706].

---

[1] Humana moves for dismissal under Rule 12(b)(6) [DE 40 at 260], but beyond a single paragraph, the motion contains no law, argument or even reference to a basis for dismissal under Rule 12(b)(6) that would be separate from the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

## B.    STANDARD

### 1.    12(b)(1)

Without subject matter jurisdiction, a federal court lacks authority to hear a case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The issue is non-waivable and may be raised by the court *sua sponte*. *Answers in Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the movant questions whether the plaintiff has alleged a basis for subject matter jurisdiction, challenging the sufficiency of the pleading itself. *Id.* The Court must take the allegations of the complaint as true. *Id.* By contrast, [a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* In a factual attack, the "court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.*   In either situation, the plaintiff has the burden of proving jurisdiction to survive a motion to dismiss. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). The Defendants' challenge to jurisdiction here is a facial attack, premised largely upon the allegations in the Complaint, thus those allegations are taken as true.

### 2.    12(b)(6)

Fed. R. Civ. P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec.*

*Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombl*y, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

## C.    ANALYSIS

Plaintiffs claim this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), diversity jurisdiction, [DE 37 at 207, ¶ 15], which Humana does not challenge. Instead, Humana argues that the Court lacks subject matter jurisdiction because Plaintiffs have failed to exhaust the Medicare Act's exclusive administrative appeal process for challenging coverage determinations. [DE 40 at 261]. Second, Humana argues that Plaintiffs' claims should be dismissed because the Medicare Act Expressly preempts all of Plaintiff's state-law causes of action. [DE 40 at 263]. The Court addresses the arguments in turn.[2]

### 1.  Administrative Exhaustion

Plaintiffs concede that they have not exhausted their administrative remedies; however, Plaintiff's argue that they need not exhaust their administrative remedies because (1) the claims do not arise under the Medicare Act, and (2) even if the claims arise under the Medicare Act, then the requirement to exhaust administrative review should be waived.  [DE 43 at 543].

As an initial matter, the Court need not determine whether the claims Plaintiffs concede are preempted needed to be exhausted.  Thus, the Court will not address Plaintiffs' claims of

---

[2] Humana argues that even if Plaintiffs had exhausted their administrative remedies, it is not the proper defendant. [DE 40 at 278-79].  Humana asserts that Plaintiffs should have sued the Secretary of Human and Health Services ("HHS") under 42 U.S.C. § 405(g) which provides that the Secretary of HHS is the proper defendant for claims seeking review of final determinations from the Medicare Appeals Counsel. [*Id.*] However, as another court in a similar matter recently noted "private entities acting on behalf of the United States or the Secretary as a Medicare Advantage Organization are subject to federal action." *Est. of Lokken v. UnitedHealth Grp., Inc.*, 766 F. Supp. 3d 835 (D. Minn. 2025) (citing *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003–04 (8th Cir. 1998)); *Reuben v. Ziemer*, No. 23-CV-3423 (NEB/ECW), 2024 WL 2477049, at *3 (D. Minn. May 1, 2024), *aff'd*, No. 24-2063, 2024 WL 4821778 (8th Cir. July 10, 2024).

Violation of North Carolina's Unfair Claims Settlement Practice (Count IV), Insurance Bad Faith (Count VI), and Unfair and Deceptive Insurance Practices (Count VII) as Plaintiffs agree they are preempted.

42 U.S.C. §§ 405(g) and (h) require claimants to exhaust administrative remedies before pursuing judicial review of claims "arising under" the Medicare Act, 42 U.S.C. § 1395, *et seq*. If a claim arises under the Medicare Act, a claimant "must follow a five-step process to fully exhaust administrative remedies." *New Vision Home Health Care, Inc. v. Anthem, Inc.*, No. 16-13173, 2017 WL 3704379, at \*7 (E.D. Mich. Aug. 28, 2017), *aff'd,* 752 F. App'x 228 (6th Cir. 2018). Administrative remedies conclude once the Secretary of the U.S. Department of Health and Human Services renders a final decision. 42 U.S.C.S. § 1395f(b)(1)(A). A final decision by the Secretary must be rendered before bringing an action in federal court. 42 U.S.C. § 405(g). As noted by the Supreme Court, "§ 405 is the sole avenue for judicial review for all claims arising under the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).

A claim arises under the Medicare Act when either (1) the "standing and the substantive basis for the presentation of the claims is the Medicare Act," or (2) where the claim is inextricably intertwined with a Medicare benefits determination. *Ringer*, 466 U.S. at 614-16. "Claims are 'inextricably intertwined' when, despite being brought under different laws, they are nothing more than a challenge to a benefits decision." *Est. of Lokken v. UnitedHealth Grp., Inc*., 766 F. Supp. 835, 843 (D. Minn. Feb. 13, 2025) (citing *Ringer*, 466 U.S. at 614-15, *Reuben*, 2024 WL 2477049, at \*2–3). Even claims that "challenge the Center for Medicare & Medicaid Services' ("CMS") regulations themselves arise under the Medicare Act because they originate out of a denial of benefits." *Id.* (citing *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1089 (N.D. Cal. 2011)). But claims may not be inextricably intertwined with a claim for benefits when a

8

Plaintiff can prove the elements of their claim without regard to any provision of the act relating to benefits. *See Mann v. Reeder*, No. 1:10-CV-00133-JHM, 2011 WL 665749, at *3 (W.D. Ky. Feb. 15, 2011). The parties do not dispute that Plaintiffs' claims would only "arise under the Medicare Act" if they are inextricably intertwined with a claim for Medicare benefits.

The premise of Plaintiffs' claims is that Humana wrongfully uses the highly inaccurate nH Predict to make coverage determinations, resulting in wrongful denials of claims, and knows only a small fraction of policyholders will ever engage in a lengthy and often futile appeal process designed to evade judicial review. [*See* DE 37]. Plaintiffs allege it is "inherently unfair for Humana to employ a coverage determination process that it knows will result in improper denials while ignoring the recommendations of doctors." [DE 37 at 13]. Plaintiffs allege "Humana fraudulently misled its insureds into believing that their health plans would individually assess their claims and pay for medically necessary care." [DE 37 at 217]. Plaintiffs allege in the amended complaint that if they had to wait to exhaust administrative remedies, they would suffer irreparable harm because their choice would either be to pay out of pocket for post-acute care or forgo care while waiting for a decision on their appeals. [DE 37 at 216]. Implicit in this allegation is wrongful benefits decisions denying post-acute care. Plaintiffs' general and contextual allegations in the overview and background section of the amended complaint leading up to the various counts intertwine with benefits decisions for post-acute care because denial of claims is what resulted in Plaintiffs' discovering Humana's use of nH Predict. [DE 37, at 203-229]. However, as detailed below, the actual counts and causes of action from the amended complaint are focused on the process and the insurance premiums allegedly paid for a certain process, rather than the actual benefits decision.

Plaintiffs' first cause of action, Breach of Contract, does not allege that Humana breached because they denied benefits, but rather that Humana breached because they used nH Predict to

make coverage determinations and failed to disclose this process to Plaintiffs. [*Id.* at 234-36]. A claim for breach of contract requires proving the existence of a contract, of a breach of that contract, and that the breach caused damages. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007). Plaintiffs allege Humana breached the contract by failing to "accurately list[] all bases for Humana's denial of claims and the factual and legal bases for each reason given for such denial," and by "making coverage determinations based upon [nH Predict]" rather than with doctors, and by "failing to disclose that nH Predict AI Model prediction was the basis for coverage determinations." Plaintiffs seek "damages in an amount to be proven at trial." [DE 37 at 236]. Plaintiffs' claimed damages appear to be insurance premiums paid for a service that was not rendered. While the general allegations of the complaint could support damages for wrongful denials of claims due to nH Predict, the claim as alleged does not appear to seek that remedy. The claim as drafted in the amended complaint does not allege a breach of the contract by denial of benefits, but for using nH Predict to determine benefits. Plaintiffs believed their insurance premiums were paying for an individualized assessment, rather than an assessment by AI.

Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing claim similarly alleges that Humana breached its duty by using nH Predict in the process of denying claims and failing to utilize agents in the process. [*Id.* at 236]. Every contract imposes a duty to act "bona fide manner," which is in good faith, "honestly, openly, and sincerely; without deceit or fraud . . ." *Pearman v. W. Point Nat. Bank*, 887 S.W.2d 366, 368, n.3 (Ky. Ct. App. 1994). A claim for implied covenant of good faith and fair dealing claim does not ordinarily require a showing of breach of contract, but instead requires showing "that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the

parties." *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 458 (6th Cir. 2005) (citing 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63:22 (4th ed. 2004)). Plaintiffs seek as damages "economic losses and other general, incidental, and consequential damages . . . statutory and nominal damages . . ." [DE 37 at 237]. As with breach of contract, this claim as alleges a breach due to use of nH Predict when the contract promised an individualized assessment. And this claim and Plaintiffs' breach of contract claim is brought on behalf of a class of all purchasers of Humana's Medicare Advantage product, regardless of whether those purchasers submitted claims for benefits. This claim and the breach of contract claim can be proven without resort to the ultimate benefits decision and are not inextricably intertwined with the benefits decision.

Plaintiffs' claim of unjust enrichment alleges that "by delegating the claims review process to nH Predict system, Humana knowingly charged Plaintiffs [] insurance premiums for a service that Humana failed to deliver." [DE 37 at 36]. As a result, Plaintiffs allege that "Humana knowingly received and retained wrongful benefits and funds." [DE 37, at 238, § 158]. An unjust enrichment claim has three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009). There must be a showing of bad faith for the retention of the benefit to be "inequitable." *See, e.g., Union Cent. Life Ins. Co. v. Glasscock*, 270 Ky. 750, 110 S.W.2d 681, 685 (1937); *Jim Huff Realty, Inc. v. Tomlin Props., Ltd.*, No. 2005-CA-002245-MR, 2007 WL 1452596, at *3 (Ky. Ct. App. May 18, 2007). Plaintiffs allege that "Humana should be compelled to return in a common fund of the benefit of Plaintiffs . . . all wrongful or inequitable proceeds received by Humana." [DE 37 at 238]. Based

on the allegations, this claim can be proven without demonstrating that nH Predict led to wrongful denials of benefits and is not inextricably intertwined with claims for benefits.

On the other hand, Plaintiffs' subclass claims in Count V for Violation of North Carolina's Unfair Methods of Competition Claim asserts that Humana engages in unfair and deceptive acts of practices or unfair methods of competition by delegating its claim review and approval process to AI, which is "designed to prematurely refuse coverage for Medicare Advantage patients without sufficient individual and holistic review." [*Id.* at 241]. This claim does go beyond not getting the benefit of the contract, i.e. an insurance premium that was based on individualized review rather than an artificial intelligence review, and asserts that nH Predict resulted in premature denials of benefits. This claim appears inextricably intertwined with benefits decisions.

Plaintiffs also allege a claim of common law fraud. Plaintiffs allege that Humana made material omissions of fact to Plaintiffs in purchasing and renewing their insurance by failing to disclose that coverage determinations would be made by "an algorithm under a process designed to deny claims on sham pretenses, and the algorithm would not conduct an individualized objective investigation." [DE 37 at 247, ¶ 212]. Generally, to prove fraud by omission a plaintiff must prove: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence. *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Plaintiffs allege that before purchasing their insurance policies Humana "failed to disclose (1) its coverage determinations would be made by an algorithm under a process designed to deny claims on sham pretenses, and (2) the algorithm would not conduct an individualized objective investigation." [DE 37 at 247]. Plaintiffs further alleges they were "injured as a direct and proximate result of Defendant's conduct because they would not have

purchased medical coverage from Defendant had they known the truth; or at minimum, they would have paid less for insurance coverage from Defendant." [*Id.*]. As with most of the other claims, this claim appears limited to Humana's failure to disclose use of nH Predict when the contract promised individualized assessment.  It does not appear that proving this claim would be inextricably intertwined with the benefits decision.  Damages are the increase in policy premiums that Plaintiffs would not have agreed to pay had they known Humana would use nH Predict to determine claims.

In addition, Plaintiffs seek injunctive and declaratory relief.  This relief seeks to enjoin Humana from "continuing its improper and unlawful claim handling practices . . ." [DE 37 at 248].  This relief seeks to ensure that claims are individually assessed by a medical professional rather than artificial intelligence, not a different result in a benefits decision.  This relief does not appear inextricably intertwined with the benefits decision.

Overall, with the exception of Count V, it does not appear Plaintiffs' claims are inextricably intertwined are with Medicare benefits determinations.  Plaintiffs challenge the use of artificial intelligence when their contract promised individualized assessment by medical professions to determine claims.  It does not appear these claims will require proving wrongful denial of benefits. And while Plaintiffs have complained about the effects of nH Predict and its results, those are alleged to demonstrate that they received a lesser service and product than they thought they were paying for. To the extent they seek damages for receiving a lesser product, then they do not have to exhaust.  But as noted above, the Complaint alleges nH Predict results in wrongful benefits determinations and to the extent they seek damages for benefits determinations and proving their claim will require proving the actual merits of a benefits decision was wrong, as with Count V, that is intertwined and must be exhausted.  Because exhaustion of administrative remedies is

required at least for Count V, and Plaintiffs admit they have not exhausted, the Court will determine if exhaustion may be excused.

### 2. **Waiver of Administrative Exhaustion**

"[T]he exhaustion requirement of § 405(g) consists of a non-waivable requirement that claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id.* at 617 (internal quotations and citations omitted). *Ringer*, 466 U.S. at 617.

In *Ringer*, the nonwaivable presentment requirement was satisfied "by presenting a claim for reimbursement for the expenses of their BCBR surgery" to the Secretary. *Ringer*, 466 U.S. at 617. As explained in *Ringer*, that reference is to the first level of the four levels of the administrative review process. *Id.* at 606, 617 ("First, the Medicare Act authorizes the Secretary to enter into contracts with fiscal intermediaries providing that the latter will determine whether a particular medical service is covered . . . [i]f the intermediary determines that a particular service is not covered . . . the claimant can seek reconsideration . . . [if]denial of the claim is affirmed after reconsideration . . . the claimant is entitle d to a hearing before an [ALJ] . . . [i]f the claim is denied again, the claimant make seek review in the Appeal Counsel . . . then . . . the claimant [may] seek judicial review . . . of the 'Secretary's final decision.'"). Neither Humana nor Plaintiffs make any argument in the briefing on Humana's motion to dismiss regarding the nonwaivable presentment requirement. [DE 40, DE 43, DE 49]. However, Humana raises for the first time in its supplement [DE 68] that presentment requires the Plaintiffs' claims to be presented to the Secretary" and cites *Ringer*. As explained above and set forth in *Ringer*, presentment to the Secretary occurs when the claimant presents its claim to Humana, the intermediary which the Secretary has contracted, to determine if a service is covered. *Ringer*, 466 U.S. at 617. Here there is no dispute that Plaintiffs

14

presented the claims at issue for reimbursement from Humana; thus, the nonwaivable requirement of presentment is satisfied. The issue is whether the second requirement to pursue administrative remedies prescribed by the Secretary should be waived.

There are three possible exceptions to the exhaustion requirement: "(1) are the claims at issue collateral to the underlying decisions as to eligibility for entitlements; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile." *Bowen v. City of New York*, 476 U.S. 467, 482–86 (1986); *see also Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994). However, "the Supreme Court 'sharply limited' the [*Bowen*] exception, to now apply only 'where application of § 405(h) . . . would mean no review at all." *S. Rehab. Grp., P.L.L.C. v. Sec'y of Health & Hum. Servs.*, 732 F.3d 670, 681 (6th Cir. 2013) (citing *BP Care, Inc. v. Thompson*, 398 F.3d 503, 509–10 (6th Cir. 2005) (quoting *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000))).

As there is no dispute that Plaintiffs did not exhaust their administrative remedies, the Court must determine whether to waive the exhaustion requirement.

a) <u>Wholly Collateral</u>

The first element that must be considered is whether the claims at issue are entirely collateral to benefit claims. *See Bowen*, 476 U.S. at 482. Claims are wholly collateral when they are completely separate from substantive claims for benefits. *See Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 364 (6th Cir. 2000). Here, Plaintiffs are alleging that Humana made benefits decisions using artificial intelligence when its contract promised to use an individualized assessments with medical professionals. In the Sixth Circuit, "a court must examine whether the allegedly collateral claim involves completely separate issues from the party's claim that is entitled to benefits or continued participation in the Medicare program or whether it is *inextricably*

15

*intertwined* with its substantive claim to benefits or participation." *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000).

Plaintiffs argue that their claims are "wholly collateral" to a claim for benefits because "plaintiffs don't not seek benefits, but instead challenge the procedure by which their claim were processed." [DE 43 at 546]. The Court does not disagree that Plaintiffs' procedural claims are wholly collateral to claims for benefits, because, as discussed above, Plaintiffs' claims are not, at bottom, a claim for benefits.

b) Irreparable Harm

Second, Plaintiff argues that they would be irreparably harmed because "[w]hile waiting for a decision on appeal, patients are left with two options: (1) to stay in post-acute care facility and risk being responsible for months or years' worth of medical bills if their appeals are denied; or (2) forgo care while they await a decision." [DE 43 at 216].

To show irreparable harm, Plaintiffs must demonstrate that "deferment of judicial review until exhaustion of administrative remedies would cause them injury that cannot be remedied by later payment of the benefits requested." *Martin v. Shalala*, 63 F.3d 497, 505 (7th Cir. 1995). But in *Bowen*, the Supreme Court noted that irreparable harm may occur when "[the] ordeal of having to go through the administrative appeal process may trigger a severe medical setback . . . [and] Interim benefits will not adequately protect plaintiffs from this harm. Nor will ultimate success if they manage to pursue their appeals." *Bowen*, 476 U.S. at 483–84 (citation and quotations omitted).

Taking their allegations as true at this stage of the proceedings, Plaintiffs in this case have suffered an irreparable harm, as they have experienced medical setbacks that cannot be remedied by a later payment requested. For example, Class Members have forgone medically necessary care which resulted in admittance to the hospital or additional treatment. [*See* DE 43 at 547]; *see*

*also Estate of Lokken*, 766 F. Supp. 3d at 847. These medical setbacks cannot be remedied by retroactive benefits or ultimate success on appeal. Therefore, Plaintiffs would suffer irreparable harm.

     c) Futility

Finally, Plaintiffs assert that exhaustion is futile for three reasons:

> (1) even if Plaintiffs succeed in any individual administrative appeal, Humana subjects them to immediate renewed denials that do not address the successful appeal with any new information, causing Plaintiffs to have to re-start the appeals process anew; (2) the Secretary lacks the authority to grant the relief necessary to systemically address Humana's improper denials based on the reliance on [AI]; and (3) Humana abuses and undermines the administrative review process such that its conduct is capable of repetition while evading review.

[DE 43 at 549]. In sum, Plaintiffs contend that there is no right to relief without waiver. [*Id*.].

"The exhaustion of administrative remedies may also be waived if it would be futile." *Manakee Pro. Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995). Exhaustion is futile when "there is no reasonable prospect that the applicant could obtain any relief by pursuing them." *Id.* At this stage of the proceedings, the Court take the Plaintiffs' well pleaded allegations as true. Plaintiffs allege that if an insured's denial is reversed on appeal, Humana immediately issues a new denial of benefits, forcing the insured to restart the appeal process from the beginning. [DE 37, ¶ 43]. Plaintiffs' complaint alleges the example of Sharon Merkley ("Merkley"), who received seven denials for the same care within 30 days, each after a successful appeal and without a factual basis for doing so. [DE 37, ¶¶ 78–86]. Plaintiffs further allege that after Merkley's subsequent hospital stay a month later, Humana issued five more denials for post-acute care—also after successful appeals, and also without factual bases. [DE 37, ¶¶ 90–94]. Plaintiffs also allege that for the few claims that do make it to the third level of the administrative process before an ALJ, Humana allegedly pays most of those claims to terminate the process. [DE 37, ¶ 46].

17

Plaintiffs allege this is by design to prevent exhaustion of the four-step administrative appeals process to ensure that benefits challenges do not make to judicial review. [DE 37, ¶¶ 46–47]. These allegations, taken as true, demonstrate futility.

In sum, Plaintiffs have demonstrated irreparable harm and futility. The requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimants in this case is waived as to all of the claims asserted to the extent they required exhaustion and the Court exercises jurisdiction.

### 2. Federal Preemption

Second, Humana contends that even if Plaintiffs' claims do not arise under the Medicare Act, all of Plaintiffs' claims are preempted by the Medicare Act's express preemption provision. [DE 40 at 20]. In response, Plaintiffs argue that the state law claims are not preempted by the Medicare Act because (1) Plaintiffs claims do not arise under the Medicare Act, and (2) the Medicare Act's preemption provision does not reach state common law claims. [DE 43 at 24, 28]. Additionally, during the hearing, and expanded in Humana's post-hearing filings, Humana argued that even if Plaintiffs' claims are not preempted, the claims must still be dismissed because the EOC is not a contract. [DE 71 at 670; DE 73 at 707].

Under the Supremacy Clause of the Constitution, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "[w]here a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993). "Congress may indicate preemptive intent through a statute.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008). "[H]owever, a court interpreting a federal statute pertaining to a subject traditionally governed by

state law will be reluctant to find preemption. Thus, preemption will not lie unless it is the clear and manifest purpose of Congress." *CSX Transp., Inc.*, 507 U.S. at 664 (internal quotation marks omitted). "If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Id.* "The language of 'any state law or regulation' – with no qualifying provisions – reflects an intent to include common law claims." *Williams v. Allegheny Cnty.*, No. 2:21-CV-656, 2023 WL 4238892, at *8 (W.D. Pa. June 28, 2023), *aff'd,* No. 23-2190, 2024 WL 3824643 (3d Cir. Aug. 15, 2024).

The Medicare Act states, "[t]he standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under [Part C]." 42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003); 42 C.F.R. § 422.402. Generally, courts have found that state common law claims can be preempted by the Medicare Act. *See, e.g.*, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022) ("applicable state consumer protection laws and common law claims can fall within the ambit of Part C's preemption provision"); *Williams v. Allegheny*, 2023 WL 4238892, at *8 ("The language any State law or regulation'—with no qualifying provisions—reflects an intent to include common law claims") (internal quotations omitted); *Alston v. United Healthcare Servs., Inc.*, 291 F. Supp. 3d 1170, 1173–75 (D. Mont. 2018) (holding that plaintiff's claims for negligence, intentional infliction of emotional distress, and breach of contract arose from defendant's alleged failure to make a timely coverage decision, thereby exacerbating his medical condition, were preempted by the Medicare Act); *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222, 1231 (D.N.M. 2018) ("Even a claim that a Medicare Advantage organization wrongfully applied or wholly disregarded the medical necessity

standard is still a claim alleging conduct that was governed by federal Medicare standards"). And more specifically, claims are "preempted by the Medicare Act if they regulate the same subject matter as the Medicare standards or otherwise frustrate the purpose of a Medicare standard." *Estate of Lokken*, 766 F. Supp. 3d at 847 (citing *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 971 (8th Cir. 2021)).

Thus, the Court must determine whether Plaintiffs' specific claims regulate the same subject matter as the Medicare Act or otherwise frustrate the purpose of a Medicare standard, because if so, they are preempted.

### 1. Common Law Claims

Plaintiffs allege four common law claims: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) common law fraud. [DE 37]. Humana asserts that Plaintiffs' common law claims are preempted because Medicare Act expressly preempts Plaintiffs' state-law causes of action, and the EOC provided to customers is not a contract. [DE 40 at 263; DE 73 at 707]. Specifically, Humana contends that even if the EOC constitutes a contract, Plaintiffs' breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment claims "regulate the same subject matter as federal Medicare standards . . . because the 'process' Plaintiffs challenge is for making coverage determinations – which is . . . already regulated by CMS." [DE 73 at 707]. Likewise, Humana states that Plaintiffs' Common Law Fraud claim is also preempted because "[f]raud by omissions requires a duty to disclose . . . [b]ut the unidentified duty here comes from the Medicare Act." [*Id.* at 708]. In turn, Plaintiffs argue that the EOC is a contract, as it refers to itself as such throughout the document. [DE 77 at 732]. And that their claims are not preempted by the Medicare Act. [DE 43 at 552].

As a threshold matter, this Court must determine whether the EOC constitutes a part of the insurance contract. In relevant part, the EOC states:

> This Evidence of Coverage is part of our contract with you about how HumanaChoice R0865-003 (Regional PPO) covers your care. Other parts of this contract include your enrollment form, the Prescription Drug Guide (Formulary), and any notices you receive from us about changes to your coverage or conditions that affect your coverage. These notices are sometimes called *riders* or *amendments*.

[DE 77-2 at 750]. Thus, the EOC refers to itself as "part of [Humana's] contract[.]" [*Id.*]. Likewise, other Courts have found EOCs as part of the contract when deciding to enforce arbitration agreements found in the EOC. *See Doe v. Kaiser Found. Health Plan, Inc.*, 725 F. Supp. 3d 1033 (N.D. Cal. 2024)*; see also*, *e.g.*, *Clay v. Permanente Med. Grp., Inc.*, 540 F. Supp. 2d 1101 (N.D. Cal. 2007); *Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F. Supp. 3d 1225 (C.D. Cal. 2016). Therefore, the Court considers the EOC as part of the contract between providers and insureds.

However, Humana further argues that even if the EOC is considered a contract, that Plaintiffs'' claims are still preempted. Specifically, Humana argues "Nonetheless, if a MAO does make misleading statements to Part C enrollees in an EOC, CMS can take enforcement action against the MAO. *See, e.g.*, 42 C.F.R. § 422.2262 ('[MAOs] may not mislead, confuse, or provide materially inaccurate information to current or potential enrollees'); 42 C.F.R. § 422.750 (CMS's powers to take enforcement action against MAOs). Thus, CMS already regulates adherence to 'promises made by MAOs in an EOC—the very issue Plaintiffs attempt to litigate here." [DE 73 at 703]. But at this stage of the proceedings, Plaintiffs' allegations must be taken as true, and taking Plaintiffs' allegations as true, the CMS will never review Humana's actions because an insured will never complete the review process.

Courts have found that common law claims are not categorically preempted by the Medicare Act. *E.g.*, *Estate of Lokken*, 766 F. Supp. 3d at 848 (finding that state law breach of contract claims and breach of implied covenant of good faith and fair dealing claims were not preempted because they did not regulate the same subject matter as the Medicare Act); *Hofler v. Aetna U.S. Healthcare of California, Inc.*, 296 F.3d 764, 768 (9th Cir.2002) ("Because Congress did not clearly manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims."); *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1 (1st Cir. 2005) (found that the Medicare Act does not preempt all common law causes of action). Thus, the Court must analyze each claim, like the Court in *Lokken* did, to decide as to whether each common law claim is preempted. *See Estate of Lokken*, 766 F. Supp. 3d at 848.

As stated above, Plaintiffs allege four common law claims: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) common law fraud. [DE 37]. Humana cites *Uhm* to support its argument that Plaintiffs' claims are preempted. [*See* DE 40 at 279-284]; *see also*, *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010). The Court in *Uhm* found that the Medicare Act preempts state law claims that are inconsistent with federal standards established under the Act, including state consumer protection laws and common law claims. *Uhm*, 620 F.3d at 1137.  However, reviewing the case law, this Court finds *Lokken* to be the most persuasive authority on this issue, as the court in *Lokken* dealt with the same issues as found in this case. *See id.* In *Lokken*, the court found that the Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims were not preempted by the Medicare Act because these claims can be determined solely by interpreting the insurance contract itself. *See id.* This Court agrees.

Regarding Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims the *Lokken* court said:

> Both the breach of contract and breach of implied covenant of good faith and fair dealing claims are not preempted. In these claims, Plaintiffs allege that UHC explicitly described claim decisions as being made by "clinical services staff" and "physicians," without mention of any artificial intelligence. (Am. Compl. ¶ 187.) These claims thus effectively arise out of UHC's evidence of coverage documents because the question would be whether UHC complied with its statement that claim decisions would be made by "clinical services staff" and "physicians" when it allegedly used artificial intelligence. Thus, in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents. Because ruling on these two claims would require the Court to only apply basic contract principles, the breach of contract and breach of the implied covenant of good faith and fair dealing claims do not regulate the same subject matter as the Medicare Act, and thus are not preempted.

*Estate of Lokken*, 766 F. Supp. 3d at 848. This reasoning can be adopted to analyze current Plaintiffs' same claims. For one, the crux of the claims in this case, and in *Lokken*, arise from insurance companies utilizing AI to make insurance coverage determinations. [*See id*.]. Thus, the question is not whether the use of AI to make coverage opinions is prohibited under the Medicare Act, but whether insurance companies use of AI is in violation of its contract with insureds. Therefore, Plaintiffs' claim for breach of contract and breach of implied covenant of good faith and fair dealing are not preempted.

However, unlike in *Lokken*, this Court finds that Plaintiffs' unjust enrichment claim is not preempted. In *Lokken*, the court reasoned that the plaintiffs' unjust enrichment claim was preempted because "Plaintiffs base their unjust enrichment claim on [the insurance company] knowingly receiving funds from Plaintiffs with the intent of denying medical payments owed to [Plaintiffs]." "Although Plaintiffs argue that the medical payments owed to the insureds stem from the insurance agreement, the Medicare Act expressly describes which services are covered." *Estate of Lokken*, 766 F. Supp. 3d at 848.

23

Here, Plaintiffs' unjust enrichment claim arises from Plaintiffs' belief that Humana (1) "knowingly charged Plaintiffs and Class members insurance premiums for a service that Humana failed to deliver [,]" and (2) "knowingly received and retained wrongful benefits and funds from Plaintiffs and Class members." [DE 37 at 238].  Because the Medicare Act expressly describes what services are covered, "[a]ny evaluation of the medical payments Plaintiffs allegedly should have received would regulate the covered serves already regulated by the Medicare Act." *Id.*  But this is not what Plaintiffs allege in this case. The crux of Plaintiffs claims is that that the people who are insured are paying for a service and not receiving this service. [*See id.*]. Therefore, the question for the Court is not whether Humana violated the Medicare Act, but whether Humana knowingly violated its contract with insureds and kept the proceeds. And unlike with the unjust enrichment claim in *Lokken*, Plaintiffs' unjust enrichment claim in this case only requires interpretation of the EOC. Accordingly, Plaintiff's Unjust Enrichment claim (Claim III) is not preempted.

Plaintiffs' final common law claim is one for common law fraud. [DE 37 at 237]. Plaintiffs allege that Humana made material omissions of fact to its insureds in its contract, knew that its material omissions were false and misleading when made, and intended its insureds reasonably relied on this omission. [*Id.*]. Specifically, Plaintiffs' assert that Humana omitted that it uses AI to make coverage determinations. Applying the same *Lokken* analysis to Plaintiffs' common law fraud claim, the Court finds that it is not preempted. For one, the Court would only be required to investigate whether Humana materially mislead insureds in its own contract, by omitting the fact that AI makes coverage determinations. *See Estate of Lokken*, 766 F. Supp. 3d at 848. Second, common law fraud is a tort claim, and tort claims are not completely barred by the Medicare Act. *See Hofler*, 296 F.3d at 768 ("Because Congress did not clearly manifest any intention to convert

24

all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims."). Thus, Plaintiffs' common law fraud claim is not preempted.

Accordingly, Plaintiffs' claims for Breach of Contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), and Common Law Fraud (Count VIII) are not preempted, and Plaintiffs' claim for Unjust Enrichment (Count III) is preempted.

2. <u>Statutory Claim</u>

Plaintiffs have one remaining statutory claim under N.C. Gen. Stat. Ann. § 75-1.1, the North Carolina Unfair Methods of Competition Act, Count V. [DE 37]. Plaintiffs contend that Humana violated the North Carolina Unfair Methods of Competition act "by delegating its evaluation of claims to the nH Predict AI Model." [DE 37 at 239]. Humana argues that this claim is preempted by the Medicare Act. [DE 40 at 281].

To determine whether a state law claim is preempted, a court examines whether the standards applicable to the dispute or subject are established under the Medicare Act. If so, the state law claim is preempted. *See Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680 (9th Cir. 2022) ("The plain language of the provision thus provides that, in order to determine whether a claim is preempted, we must identify whether there is a relevant 'standard[ ] established under [Part C]' with preemptive effect.").

In relevant part, the North Carolina Methods Unfair Methods of Competition Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1(a). And the Medicare Act describes how insurance claim decisions are to be made and the time frame for such decisions. *See* 42 C.F.R. § 422.101, 422.566, 422.568. Thus, because Plaintiffs' claim that

Humana violated N.C. Gen. Stat. Ann. § 75-1.1 "by delegating its evaluation of claims to the nH Predict AI Model[,]" and the Medicare Act expressly regulates how claim decisions are to be made, this claim is preempted by the Medicare Act.  As a result, Plaintiffs' claim under N.C. Gen. Stat. Ann. § 75-1.1 is expressly preempted.

## CONCLUSION

For the reasons above, and being otherwise sufficiently advise, **IT IS ORDERED**:

(1) Defendants' Motion to Dismiss [Docket No. 40] is **GRANTED in part** and **DENIED in part**;

(2) Count 1 (Breach of Contract), Count 2 (Breach of the Implied Covenant of Good Faith and Fair Dealing), Count 3 (Unjust Enrichment), and Count 8 (Common Law Fraud) may proceed; and

(3) Count 4 (Violation of North Carolina's Unfair Claims Settlement Practice), Count 5 (Unfair Competition Law – North Carolina), Count 6 (Insurance Bad Faith), and Count 7 (Unfair and Deceptive Insurance Practices) are **DISMISSED with prejudice**.

August 14, 2025

Rebecca Grady Jennings, District Judge
United States District Court